### Frederick J. Fayette v. Ford Motor Credit Company

[282 A.2d 840]

No. 164-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 5, 1971

506

*Donald E. O'Brien,* Burlington, for Plaintiff.

*George R. McKee* and *Lisman & Lisman,* Burlington, for Defendant.

**Smith, J.** This is an action of fraud, brought by the plaintiff, Frederick J. Fayette against the defendant, the Ford Motor Credit Company, in the Chittenden County Court. Jury trial in said court commenced on October 6, 1970, and resulted in a verdict for the plaintiff in the amount of $24,500.00. The defendant has taken its appeal from the verdict and resultant judgment here.

The defendant has briefed the following exceptions before this Court:

"(1) The denial of its motion for a directed verdict, made at the close of plaintiff's case and again, at the close of all the evidence, and to the denial of its motion to set aside the verdict and for judgment N.O.V.

(2) The denial of its motion that the plaintiff not be permitted to make the final argument on his behalf.

(3) Certain arguments of the plaintiff to the jury.

(4) The failure of the Court to give the jury certain instructions."

The plaintiff, Frederick J. Fayette, is the brother of one Philip Fayette, who in 1966 had a Ford Agency entitled "Faysey Ford Sales, Inc.", hereinafter called "Faysey". The plaintiff had assisted his brother by advancing sums to Faysey and meeting payments on its behalf. Philip Fayette had a credit arrangement with the defendant under which they would finance his new cars as well as a capital loan agreement.

There came a time when Faysey was selling more new cars than anticipated, but in so doing accumulated a stock of used cars which did not sell as rapidly. This resulted in a situation where Philip was selling the new cars without the mortgages to the defendant being paid off, a situation known in the trade as "out of trust."

As a result of this situation, a meeting was held at the plaintiff's office in September, 1966. Present were the plaintiff, his brother Philip, John O. Casey, general and sales manager of Faysey, and a Mr. Holloway, the district manager for the defendant, Ford Motor Credit Company. The evidence is undisputed that the reason for the meeting was the fact that Faysey was selling its new cars without paying off the mortgages held on them by the defendant. New financing was needed for working capital for Faysey, and an attempt was made to reach an arrangement with the plaintiff to furnish additional funds to his brother for such purposes, so that the business would not have to be closed down.

The conversations and agreements entered into at this meeting are the basis for the fraud action brought by the plaintiff, and all evidence on what occurred at this meeting came from the plaintiff and witnesses called in his behalf. No evidence was offered by the defendant to contest the plaintiff's version of the case. According to the plaintiff and his witnesses, the plaintiff had at that time a claim of $18,000.00 against Faysey for money already advanced to that company.

Mr. Holloway, the district manager for the defendant, stated, in effect, that if the plaintiff would advance additional funds, a floor plan for the used cars could be set up which he would work out. No termination date was set for the duration of the plan.

The evidence was that Mr. Holloway stated that if the plaintiff would furnish the additional funds needed, with the new floor plan Faysey would be put into excellent shape and its operation would be assured at an economic and profitable level. It was also the evidence of the plaintiff that Mr. Holloway represented the used car floor plan and the other financial arrangements of Ford Motor Credit Company would continue until the summer of 1967, when the new Ford models would appear on the market, and which time would be an excellent one to sell the agency.

As a result of this conversation, Frederick Fayette advanced the sum of $20,000.00 to Faysey, and also signed an agreement with the defendants by which he agreed to subordinate his claims for the $18,000.00 previously advanced, as well as the new loan of $20,000.00, to the claims of the defendant. The used car floor plan was set up, and placed in operation.

About January 1, 1967, the defendant installed a caretaker in the business to see that the funds received were applied only to meet payrolls and to apply the balance on the debts of the company to the defendant. Although some cars were still being sold "out of trust" the caretaker reported that the condition of Faysey was better, and things were going to work out. Between September of 1966 and February of 1967, Mr. Holloway was replaced as district manager of Ford Motor Credit Company by three different successors. The fourth new manager, without notice to the plaintiff or any of the principals of Faysey, caused suit to be brought and Faysey to be closed down by the sheriff. After the sheriff's sale, and the disposal of the new cars on hand, Faysey was left with an indebtedness to the defendant in the amount of $64,000.00. This proceeding drove Faysey out of business and led to this action.

██ Defendant's motion for a directed verdict was based upon the claimed insufficiency of the evidence to show a case of fraud and deceit, representations of existing facts, falsity, and knowledge of the falsity by the defendant, or that the defendant made false representations as of its own knowledge without in fact knowing them to be true.

"Fraud is never presumed and must be established by clear and satisfactory evidence, as to which the plaintiff

has the burden of proof." *Lyndonville Savings Bank* v. *Peerless Insurance Co.*, 126 Vt. 436, 440, 234 A.2d 340 (1967).

> "To support an action for fraud or deceit, the representations must be of existing facts relating to the subject matters of the contract, affecting its essence and substance, not matters of judgment or opinion, not of facts that will exist, nor of promises. The representation must be . . . false and at the time known by the seller to be false, or made by the seller as of his own knowledge without his in fact knowing them to be true; they must not be open to the knowledge of or known by the buyer and must be relied upon by him in entering the contract to his damage." *Anderson* v. *Knapp*, 126 Vt. 129, 133, 225 A.2d 72 (1966).

Relying upon the principles expressed in the above case, it is the contention of the defendant that any representation made by Mr. Holloway to the plaintiff as to the duration of the agreement of the defendant to maintain a floor sales plan for the used cars taken in trade by Faysey was, at best, only a promise, regarding facts that would exist in the future, and not of existing facts.

But there are certain exceptions to the principles of law expressed in the cases above cited, relative to false representation or broken promises relating to the future.

> "While a promise, standing alone, does not afford the basis of actionable fraud, it is not improper to consider broken promises where there was a general scheme to defraud of which the promises were steps in a series of actions constituting the scheme. A future promise may be fraudulent when it is a part of a general scheme or plan, existing at the time, to induce a person to act, as he otherwise would not, to his injury." *Gramatan National Bank* v. *Beecher*, 121 Vt. 39, 46, 146 A.2d 246 (1958).

This Court held in *Comstock* v. *Shannon et al.*, 116 Vt. 245, 250, 73 A.2d 111 (1950), that while false representations or promises referring merely to the future do not afford the basis of actionable fraud, it is not improper to consider broken

promises where there was a general scheme to defraud of which the promises were steps in a series of actions constituting the scheme. In *Comstock*, the Court distinguished this situation from the one considered in *Girard* v. *Jerry*, 95 Vt. 129, 131 (1921), which held representations or intention, or promises, having reference to the future, constitute no ground of action, and actions for fraud and deceit do not lie for failure to perform a promise to do something in the future which the promisor does not intend to do, although the promisee acts in reliance thereon to his damage.

In accord with the *Comstock* decision, *supra*, but possibly extending this exception to the rule of nonliability for fraud and deceit is the statement in 37 Am.Jur.2d *Fraud and Deceit* § 64, at 98:

> "A statement by a speaker as to what he intends to do may import a statement of fact, that is, as to his present intention; and if his expressed intention is merely feigned in order to mislead, a charge of fraud may be predicated thereon."

In support of the same exception to the rule of nonliability for fraud and deceit is found in Restatement of Torts § 525 (1938):

> "One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or refrain from acting in reliance thereon in a business transaction is liable to the other for the harm caused to him by his justifiable reliance upon the misrepresentation."

The factual situation which directly confronts us in applying the law stated above is that which existed at the time that the plaintiff, Faysey, and the defendant had a conference in September, 1966. Virtually undisputed is the fact that Faysey, at that time, was in grave danger of being forced to go out of business because it had not fulfilled its financial obligation to Ford Motor Credit Company, due to its selling new cars "out of trust." The plaintiff, who had already advanced $18,000.00 to Faysey, was requested by Mr. Holloway, district manager of the defendant, to advance an additional $20,000.00 to Faysey to meet its obligation to the defendant, and, further, that

the plaintiff should sign an agreement to subordinate his past and future advances to Faysey to the claims of the defendant.

Viewing the evidence in the light most favorable to the plaintiff, the prevailing party below, in return for these actions by the plaintiff, the defendant agreed to certain actions on its part. First, it would set up a used car floor plan for Faysey, and second, would support this operation until the optimum time for sale might arrive. It was agreed that such optimum plan would be when the new Ford models came out in the summer of 1967. As we understand the contention of the defendant, it is the last part of this agreement, relative to the continuation of the used car plan established by the defendant at Faysey, which it claims, if a promise, was one relating only as to a fact that might exist in the future and did not constitute a legal ground for fraud and deceit.

The charge of the lower court, to which no exception was taken, was that no question was raised as to the authority of Mr. Holloway to act on behalf of the defendant in the agreement made with the plaintiff, and that any actions taken and statements made by Mr. Holloway in the course and within the authority of his management were chargeable to the defendant.

The evidence, taken in the light most favorable to the plaintiff, makes clear that if "putting good money after bad" would only extend for a short period, the operations of Faysey, that he would have no interest in subordinating his current claim or advancing more money for the enterprise. In view of this expressed, and not unreasonable statement of his position by the plaintiff, the defendant promised that the operation would continue until a desirable time for sale in the summer. This was an inducement to the plaintiff to enter into the subordination agreement and to loan additional money to Faysey.

Next in the series of steps was the failure of the defendant to disclose to Faysey, and the plaintiff, the current status of their account with Faysey, as promised. The Ford Motor Credit Company, the defendant, had placed a caretaker in Faysey to pay all money, except that needed to meet payrolls, to the defendant, and the caretaker's report to the plaintiff on the condition of Faysey was optimistic, but the defendant did not report to Faysey the current status of its account.

Then, on February 24, 1967, a new branch manager came to Burlington for the defendant. Significantly, perhaps, he was the third manager appointed to that post since the time of Mr. Holloway, and he knew nothing of the agreement made at the meeting of September, 1966, and, of course, he did not dispute the existence of such an agreement.

Within a few days of the new manager's arrival in Burlington, he contacted Mr. Philip Fayette regarding the obligations due from Faysey to the defendant and informed him that unless additional money was furnished that some action would have to be taken by the defendant. Philip Fayette was unable to raise additional funds or credit and on March 7, 1967, the defendant brought suit against Faysey, without previous notice of such action to Faysey or the plaintiff; attached all its assets, padlocked its door, and in effect, put it out of business. Later, all assets of Faysey were sold, except the land and building, the proceeds applied against its debt to the defendant, leaving due to the defendant the sum of $64,000.00.

The statements of Mr. Holloway to the effect that the defendant would establish a used car floor plan for Faysey were promises made to correct the then present condition of Faysey. But, from a business and legal viewpoint there can be no practical doubt that if such statement was not coupled with a promise as to the duration of such agreement on the part of the defendant, there would have been no incentive for Frederick Fayette to advance additional funds to finance the operations of Faysey, nor to subordinate his claims against Faysey to the claims of the defendant. It was the combination of promises, one as to the present, and one as to the future that induced the plaintiff to act as he did, to his injury. The language of the representation, the agreement to place the floor plan in immediate operation, as well as the promise to keep such plan in operation until the opportune time came to sell the business, was susceptible to a construction which made both statements applicable to the present condition of Faysey, and the interpretation of such representation was for the triers of fact.

In addition, the undisputed evidence strongly indicates that there was a general scheme on the part of the defendant to induce Frederick Fayette to advance money, and subordinate

his own claims against Faysey to the defendant, which he would not have done in the absence of the representation on the part of the agent and officer of the defendant. Such evidence consists in the rapid replacement by the defendant of Mr. Holloway, who made the representations to the plaintiff, by a series of new managers. Then came the sudden closing down of the business of Faysey by the last appointed successor of Holloway, who, admittedly, had no knowledge of the original agreements made between Faysey, Fred Fayette and the Ford Motor Credit Company. The fact that the specifications filed in the suit by the defendant against Faysey, which brought about the sudden and abrupt cessation of the business of Faysey were in the original amount of $160,000.00, were eventually changed to a specification of only $64,000.00 is of some interest in this matter.

All of this evidence, taken in the light most favorable to the plaintiff, permitted the jury at the trial below to draw the inference that the defendant had no intention of keeping the floor plan in operation until an opportune time came to sell the business, as it had agreed, if such agreement was not profitable to it.

The lower court was correct in denying the motions of the defendant based on the insufficiency of the evidence, as well as the denial of the motion for a directed verdict in favor of the defendant.

█ In its motion for a judgment notwithstanding the verdict, the defendant also asserts and briefs that the evidence does not show any damage to the plaintiff. This is based upon the fact that the ground and buildings remained unsold at the time that the defendant sold the assets of Faysey under its attachment and judgment. However, there is nothing in the record before us to disclose the present status of the real property that belonged to Faysey, and the record is clear that there remained a balance due from Faysey to the defendant of $64,000.00 after the sale of the personal property of Faysey to Fred Fayette. Under the subordination agreement signed by the plaintiff, the defendant would still have the first claim against the remaining property of Faysey, if any, before the plaintiff could assert his claim. Defendant takes nothing by this exception.

The defendant has next briefed its exception to the lower court's denial of its motion that the plaintiff should not be permitted to make the final arguments on his own behalf. The plaintiff, an attorney of this Court, tried his own case below except in the matter of his own examination as a witness which was conducted by Attorney Donald O'Brien, associated with him in the case. There is no prohibition against a plaintiff in a *pro se* situation arguing his own case before the jury.

Courts are divided upon the question of an attorney arguing his own case before a jury. See 7 Am.Jur.2d, *Attorneys at Law* § 6. While this Court does not necessarily approve of this procedure, we believe that in the last analysis it is a question directed to the discretion of the trial court, and, the defendant having failed to establish that there was an abuse of discretion to its prejudice, the ruling of the trial court will be sustained.

The defendant also asserts that the plaintiff argued to the jury upon testimony which the defendant claims was not in the case. However, we think the lower court took care of this question by its statement: "I think the jury is capable of determining what the facts are." This properly left the determination of what the evidence actually was to the jury, who were the fact finders in the trial.

The record disclosed that the facts upon which plaintiff argued were substantiated by testimony other than his own. The lower court acted within its discretion in denying the motion of the defendant.

Defendant's final briefed exception is to the charge of the lower court. The objection was couched in the following language:

> "Although I recognize that it is not the obligation of the Court to charge on every aspect of the evidence, there's some evidence in this case on which the Court should have charged because of its importance, and therefore the Defendant excepts to the failure of the Court to charge the jury that an agreement to set up a used car floor plan cannot in and of itself, or in combination with other promises or representations looking to the future be the basis of a verdict for the plaintiff. The Defendant also excepts to the failure of the Court to charge the jury

that an agreement to maintain the used car floor plan into the summer on a representation that this would be done, could not and of itself run in combination with other promises or representation looking to the future be the basis of a verdict for the plaintiff."

No requests to so charge were made by the defendant before the delivery of the charge by the lower court.

■ By this exception the defendant was requesting the court, in effect, to direct a verdict for the defendant. In view of what has been said in this opinion, such requested charge would have been in error, and defendant takes nothing by this exception.

In addition to the exceptions presented here by the brief of the defendant, we are also confronted by an exception to the charge taken by the plaintiff relative to the awarding of damages. The lower court charged that the jury should not consider as damages any advances made to or on behalf of Faysey by the plaintiff prior to the meeting on or about September 20, 1966. Although requested, the lower court refused to instruct the jury that it could consider, if it awarded damages to the plaintiff, the sum of $18,000.00, advanced prior to September 20, 1966, and which amount was subordinated to the defendant in the agreement of September 23, 1966.

The record before us shows that the $18,000.00 was composed of various amounts paid by the plaintiff to Philip Fayette, the defendant, various credit companies and others, over an unspecified period of time prior to September 20, 1966.

It was the testimony of the plaintiff that all such sums were paid for the benefit of Faysey, and that his standing was that of an unsecured creditor of that corporation.

■ Damage recovery in cases of fraud and deceit is restricted in all cases to such damages as were the natural and proximate consequences of the fraud, and to such damages as can be clearly defined and ascertained. 37 Am.Jur.2d, *Fraud and Deceit* § 343, at 460, 461, and cases cited thereunder.

■ It is the contention of the plaintiff that by signing the subordination agreement with the defendant that he, in

effect, was damaged to the extent of the $18,000.00 through the fraud of the defendant.

However, we believe that such an assumption must be built upon speculation. At the time of the meeting between the plaintiff, the representatives of Faysey, and Mr. Holloway, the representative of the defendant, the imminent threat facing Faysey was a closing down of its operations, and the foreclosure of the chattel mortgages which the defendant held on the automobiles in the possession of Faysey. If such a situation had come about, just what the value of the unsecured debt of Faysey to the plaintiff was would have been difficult of ascertainment. Such unsecured debt might have been of little or no collectible value. We hold that under the factual situation which existed, and under the law, the lower court was correct in instructing the jury that it must limit its findings as to damages to those incurred after the conference between the defendant and the plaintiff on or about September 20, 1966, and that they were not to consider as damages advances made to Faysey by the plaintiff prior to such meeting. Exception denied.

*Judgment affirmed.*