2007 VT 132

## Grafton SMITH v. COUNTRY VILLAGE INTERNATIONAL, INC. and Douglas R. Foregger

[944 A.2d 240]

No. 06-336

*Toor*, J.

¶ 1. December 3, 2007. Plaintiff Grafton Smith appeals a superior court post-trial decision that reduced plaintiff's damages award to zero and entered judgment for defendants Douglas Foregger and Country Village International, Inc. (CVI) on all claims as a matter of law. Plaintiff brought suit against defendants for fraud and breach of contract related to his purchase of CVI stock. The jury found for plaintiff on both claims, awarding $10,000 in damages for fraud, but no damages for breach of contract. The court granted defendants' post-trial motion for judgment as a matter of law and denied plaintiff's motions for additur or a new trial. We affirm.

¶ 2. In reviewing the grant of a motion for judgment as a matter of law, we look to see "whether the result reached by the jury is sound in law and on the evidence produced." *Brueckner v. Norwich Univ.*, 169 Vt. 118, 122, 730 A.2d 1086, 1090 (1999) (quotation omitted). Granting such a motion is improper if any evidence produced at trial fairly and reasonably supports the nonmoving party's claim. *Id.* We therefore view the evidence in the light most favorable to the nonmoving party, excluding modifying evidence. *Id.*

¶ 3. Plaintiff presented evidence of the following at trial. Plaintiff and defendant Foregger founded CVI around 1994. CVI focused on selling and renting vacation homes. The company was an umbrella organization that acted as a holding company for entities based predominantly in Stowe, VT and Nantucket, MA. After a few years as business partners, plaintiff amicably split with defendant Foregger, leaving defendant Foregger in charge of CVI. Desiring to rejoin the company in 1998, plaintiff agreed with defendant Foregger to contribute a capital investment of $250,000 to CVI in exchange for stock and a seat on the company's board of directors.

¶ 4. One year later, defendant Foregger approached plaintiff, advising plaintiff that the company was $250-$300,000 in debt, and asked him to again invest capital in CVI. Plaintiff knew that, in addition to its debt, the company had a negative cash flow because its expenses outpaced its income. Plaintiff agreed to put $300,000 into CVI, provided that the money was used only to pay off the company's creditors. Defendant Foregger

agreed to this condition. As part of the parties' oral agreement, plaintiff was to acquire additional stock in CVI in return for his investment. The written stock purchase agreement for this transaction stated that "[t]he parties covenant and agree that the funds remitted to the Seller in payment of the Purchase Price shall be first applied to satisfying existing historical liabilities, and the balance, if any to current operating expenses as the[y] are incurred."

¶ 5. Generally frustrated with how CVI was being run, plaintiff decided to leave the company in December 2002, and redeemed all of his stock for just one dollar. Plaintiff later learned that the $300,000 was not spent in the manner promised. Plaintiff's accounting expert testified, based on his examination of CVI financial records, that within one day of his deposits, plaintiff's $300,000 infusion to the company was transferred to the other entities through which CVI did business.* CVI's debt, which the accountant found to be at least $150,000 at the time, was not discharged.

¶ 6. Plaintiff subsequently brought suit against defendants for fraud and breach of contract, claiming that the $300,000 was not used by CVI in accordance with the agreement. Plaintiff maintained that his funds were instead devoted to purposes other than the payment of CVI's debt in violation of his oral agreement with defendant Foregger and his written agreement with CVI. The jury found defendant Foregger guilty of fraud and CVI guilty of both fraud and breach of contract. The jury awarded $10,000 to plain-

---

* This was, for the most part, the end of the money trail. No evidence suggested that these funds were paid over to other investors. Nor was there any evidence to support plaintiff's speculation, mentioned at trial, that the monies might have been diverted so that defendant Foregger could live beyond his means.

tiff on the fraud claim and nothing on the breach of contract claim. Defendants subsequently moved for judgment as a matter of law, and plaintiff moved for an amended judgment and additur or, in the alternative, for a new trial.

¶ 7. The court granted defendants' motion for judgment and denied plaintiff's post-trial motions. The court held that the evidence did not support a finding of fraud because defendants' agreement constituted merely a promise to act in the future and was not part of a larger scheme to defraud plaintiff. See *Fayette v. Ford Motor Credit Co.*, 129 Vt. 505, 510-11, 282 A.2d 840, 844-45 (1971) (holding that a false promise to act in the future may be actionable as fraud "where there was a general scheme to defraud of which the promises were steps in a series of actions constituting the scheme"). The court also found, as a separate basis for granting defendants' motion, that the fraud claim was not supported as it was factually indistinguishable from the contract claim. See *Bevins v. King*, 147 Vt. 203, 204, 514 A.2d 1044, 1045 (1986) ("fraud must be extraneous to the contract, rather than a fraudulent nonperformance of the contract itself"). Finally, the court found plaintiff's evidence insufficient to sustain the jury's damages award, concluding, "[t]here was simply no proof of damages." Judgment was entered for defendants, and plaintiff appealed.

¶ 8. The trial court was correct in its determination that plaintiff failed to prove any damages resulting from fraudulent inducement. In cases of fraud, the deceived party has two options: rescind the agreement and recover the price paid or, as here, stand on the contract and seek recovery of either the damages incurred by the fraud or the damages resulting from the breach of contract. *Collier v. Nolan*, 125 Vt. 82, 85, 211 A.2d 265, 269 (1965). Plaintiff's measure of damages in an action for fraud "is the net amount of the money he has

actually lost as a result of the fraud practiced on him." *Larochelle v. Komery*, 128 Vt. 262, 268, 261 A.2d 29, 33 (1969). As explained in *Fayette*, "[d]amage recovery in cases of fraud and deceit is restricted in all cases to such damages as were the natural and proximate consequences of the fraud, and to such damages as can be clearly defined and ascertained." 129 Vt. at 516, 282 A.2d at 847. If it was evident that the stock for which plaintiff paid $300,000 had no value, its worthlessness was not at all tied to defendants' false promise. There was no testimony whatsoever, or any other evidence, suggesting that had the $300,000 been applied to CVI debt as promised the stock would have been worth the $10,000 awarded, or any amount more than the single dollar redeemed by plaintiff.

¶ 9. For similar reasons we must reach the same conclusion with respect to the recovery sought for breach of contract. To prove breach of contract, plaintiff must show damages. Two types of damages are recoverable: "direct damages that naturally and usually flow from the breach itself, and special or consequential damages, which must pass the tests of causation, certainty and foreseeability." *Waterbury Feed Co. v. O'Neil*, 2006 VT 126, ¶ 25, 181 Vt. 535, 915 A.2d 759 (mem.) (quotation omitted). Neither kind of damages could be established on the basis of the evidence below. If plaintiff's stock plummeted from $300,000 to one dollar in value, there was no evidence to link that diminution in value to defendants' failure to honor CVI's contract to first retire its debt. Plaintiff agreed to invest $300,000 in a company already in debt for nearly $300,000, with the further agreement that any balance remaining after paying off debt would be applied to operating expenses which plaintiff knew exceeded the company's income. Absent any evidence that the promised debt reduction would have preserved the value of plaintiff's stock, plaintiff proved no difference be-

tween what he bargained for and what he received.

¶ 10. Failure to prove damages is fatal to a claim for breach of contract, *Dufresne-Henry Eng'g Corp. v. Gilcris Enters.*, 136 Vt. 274, 277, 388 A.2d 416, 418-19 (1978) (affirming judgment for defendant as a matter of law when plaintiff failed to prove damages), as well as for fraud. *Donovan v. Towle*, 99 Vt. 464, 472, 134 A. 588, 591 (1926) (upholding the trial court's jury instruction that "fraud without damage . . . will not sustain this action."). The court thus did not err by entering judgment for defendants. Accordingly, we need not resolve the remaining challenges as to whether the evidence was sufficient to sustain the other necessary elements for breach of contract and fraud.

*Affirmed.*