2010 VT 34

**Ryland IANELLI v. U.S. BANK**

[996 A.2d 722]

No. 09-376

¶ 1. April 12, 2010. Plaintiff Ryland Ianelli appeals from the trial court's grant

of summary judgment to defendant U.S. Bank (the Bank) on his consumer fraud, common law fraud, negligent misrepresentation, and breach of contract claims following a dispute arising out of the Bank's conduct in handling plaintiff's overdrawn bank account. We affirm.

¶ 2. In August 2004, plaintiff opened a student checking account with the Bank in Portland, Oregon. Upon opening the account, plaintiff was provided with a Deposit Account Agreement, which required plaintiff to review his monthly statements, notify the Bank of any changes in his address, and notify the Bank if he wished to close his account. In May 2006, plaintiff overdrew his account by forty-five dollars. Between May and July 2006, the Bank imposed fees and sent several notices of overdraft to plaintiff's most recently provided address, but the notices were returned as undeliverable and were not received by plaintiff. The Bank closed plaintiff's account in July 2006 and sent notification of the closure to plaintiff, which plaintiff again did not receive. Rather than pursuing the collection and fees itself, the Bank sold the debt, which now totaled $292.37 with fees and interest, to United Credit Recovery (UCR) in December 2007.

¶ 3. K.B. Merrill Associates (KBMA), a contractor providing debt collection services to UCR, left a message regarding the debt on the home telephone of plaintiff's mother, who lives in Vermont, on March 3, 2008, which she relayed to plaintiff in Oregon. Plaintiff then spoke with Heather Norquist, a branch manager of the Bank, on March 6, 2008. Norquist informed plaintiff that his account had been overdrawn in 2006, that notices had been sent and the debt had grown due to interest and fees, and that the bank had sold the debt to UCR. Later that same day, plaintiff called a representative at KBMA and arranged to resolve his debt by paying $200 to KBMA by March 28, 2008. He also provided to the representative an access number and authorization to debit his Vermont checking account if payment was not received by that date.

¶ 4. On March 7, plaintiff's mother, unaware of plaintiff's arrangement with KBMA, spoke with Nancy Lutz, the Bank's District Operations Manager in Oregon, and Phillip Lewis, an employee in the Bank's Ohio Recovery Department. During that conversation, Lutz and Lewis agreed to accept payment of $150 from plaintiff's mother in exchange for the Bank's repurchase of plaintiff's account from the collection agency. Following that conversation, plaintiff's mother mailed a $150 check to Lutz. The Bank sent a check by overnight mail in the amount of $292.37 to UCR on March 21 to repurchase plaintiff's debt. At this point, plaintiff's mother informed plaintiff of her arrangement with the Bank, but plaintiff did not disclose his prior agreement with KBMA to her, nor did he notify the Bank of the agreement. Plaintiff's mother called Lewis on March 25 after she received a collection notice from KBMA in the mail. Lewis informed her that the matter was settled but that there might be "a lag" for KBMA/UCR to process payment, and to direct any further inquiries from KBMA to himself. The next day, plaintiff's mother sent a letter to KBMA that provided Lewis's contact information and stated that the matter had been settled with the Bank. Nonetheless, on March 28, KBMA debited $200 from plaintiff's account.

¶ 5. On March 29, plaintiff's mother wrote a letter to the Bank which stated that she had entered into a "crystal clear agreement" with the Bank on March 7, under which she paid the Bank $150 to have her son's account "pulled" from the collection agency. Specifically, she stated that she was "hoping and expecting that the bank would, as promised, resolve this matter so that only $150 is collected, return $200 to [her] son, and call off the wolves." The letter was received by the

Bank on March 31, after which all collection activity ceased, and a $200 check was issued to plaintiff from the Bank on April 18.

¶ 6. Plaintiff subsequently filed a Fair Debt Collection Practices Act claim against KBMA, which settled for $500. On June 16, 2008, plaintiff filed a four count complaint against the Bank alleging (1) violation of the Vermont Consumer Fraud Act (VCFA); (2) common law fraud; (3) negligent misrepresentation; and (4) breach of contract. After written discovery, plaintiff moved for partial summary judgment on the VCFA claim. The Bank filed an opposition to plaintiff's motion and a cross-motion for summary judgment on all counts. The trial court denied plaintiff's motion for partial summary judgment, concluding that there was no indication that the Bank had made any misleading statements or misrepresentations to plaintiff or his mother. The court also granted the Bank's motion for summary judgment on all claims, concluding again that no misrepresentation had occurred and, further, that plaintiff had not demonstrated that he had suffered any damages. This appeal followed.

¶ 7. We review an order of summary judgment de novo, applying the same standard of review as the trial court. *Doe v. Forrest*, 2004 VT 37, ¶ 9, 176 Vt. 476, 853 A.2d 48. Summary judgment will be affirmed where there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). In our review, the nonmoving party is afforded "the benefit of all reasonable doubts and inferences." *Forrest*, 2004 VT 37, ¶ 9.

¶ 8. Plaintiff first contends that the trial court erred by failing to grant his motion for partial summary judgment on the VCFA claim. He argues that the Bank violated 9 V.S.A. § 2453(a), which prohibits "unfair or deceptive acts or practices in commerce," by leading him to believe, in error, that the debt could be settled by payment of $150 to the Bank. The trial court granted summary judgment in favor of the Bank and determined that plaintiff's claim failed because no misrepresentation occurred. We agree.

¶ 9. The Legislature enacted the VCFA "to protect this state's citizens from unfair and deceptive business practices and to encourage a commercial environment highlighted by integrity and fairness." *Gramatan Home Investors Corp. v. Starling*, 143 Vt. 527, 536, 470 A.2d 1157, 1162 (1983); accord 9 V.S.A. § 2451 (stating that consumer fraud laws are intended to protect the public and to encourage fair and honest commercial practices). To further the purposes of the VCFA, we construe its provisions liberally. See *Wright v. Honeywell Int'l, Inc.*, 2009 VT 123, ¶ 7, 187 Vt. 123, 989 A.2d 539 (the VCFA "is to be liberally construed to protect the public and encourage fair and honest competition"); *State v. Custom Pools*, 150 Vt. 533, 536, 556 A.2d 72, 74 (1988) (this Court's primary objective in interpreting the VCFA is to give meaning and effect to its underlying legislative purpose).

¶ 10. To survive summary judgment, plaintiff must establish a deceptive act or practice by demonstrating that: (1) there was a representation, practice, or omission by the Bank that was likely to mislead consumers; (2) plaintiff interpreted the message reasonably under the circumstances; and (3) the misleading effects were material, meaning that the conduct influenced plaintiff's conduct regarding the transaction. *Jordan v. Nissan N. Am., Inc.*, 2004 VT 27, ¶ 5, 176 Vt. 465, 853 A.2d 40. Given the VCFA's underlying purpose of protecting the public from unfair commercial practices, we have construed the elements of a claim under the Act using an objective standard. *Inkel v. Pride Chevrolet-Pontiac, Inc.*, 2008 VT 6, ¶ 10, 183 Vt. 144, 945 A.2d 855. Thus, a consumer may establish the first element by showing that "the representation or omission had the tendency or capacity to

deceive a reasonable consumer." *Id.* (quotation omitted). The protective nature of the Act is further reflected by the fact that a consumer need not show intentional misrepresentation or deception to establish liability. *Id.*; see also *Winton v Johnson & Dix Fuel Corp.*, 147 Vt. 236, 244, 515 A.2d 371, 376 (1986) (holding that the only showing of intent required for a VCFA claim is the intent "to do the act involved.") (quotation omitted).

¶ 11. Even under our broad construction of the VCFA in light of its purpose, plaintiff's claim fails. Plaintiff bases his VCFA claim on the statements made to plaintiff's mother when she called the Bank on March 7 — to the effect that the Bank would accept payment of $150 to settle plaintiff's debt — and alleges that those statements establish a "deceptive act" by the Bank within the meaning of the statute. Plaintiff contends that the Bank's statements to his mother were "patently false" when it agreed to resolve the claim with KBMA because it no longer owned the debt and consequently had no power to settle it.

¶ 12. Contrary to plaintiff's assertion, there is no evidence that the Bank led plaintiff or his mother to believe that it still owned the debt. Instead, the statements made by the Bank during the conversation in question indicated only that it agreed to contact KBMA and repurchase the debt in exchange for $150 to be paid by plaintiff's mother. The Bank expressly informed plaintiff that the debt had been sold to a collection agency and was no longer under the control of the Bank. At no time did the Bank state that it would resolve the matter within a certain timeframe or that all collection would cease immediately. Neither the Bank nor plaintiff's mother knew of the March 28 deadline at the time, nor was acting before a certain date a term of the agreement. The fact that the Bank no longer owned the debt did not render it unable to settle the debt — indeed, the Bank ap-pears to have done everything that it said it would do.

¶ 13. Plaintiff's reliance on *Inkel*, 2008 VT 6, is therefore misplaced. In that case, the plaintiffs asserted a VCFA claim against the defendant car dealership and alleged that the dealership engaged in a deceptive act by understating the cost of purchasing a new truck. The plaintiffs alleged that the dealership quoted them a specific payoff price for their trade-in vehicle, included vague or misleading terms in the sales contract, and initially stated to the plaintiffs that they would not have to pay over-mileage fees on their trade-in vehicle, then later informed the plaintiffs that they owed significantly more money on their new truck because they owed an over-mileage payment. In *Inkel*, we concluded that the trial court's grant of summary judgment in favor of the dealership was inappropriate "[g]iven the lack of clarity as to what transpired." *Id.* ¶ 15. We found that a jury could reasonably conclude based on the facts that, whether in good faith or not, the dealership had engaged in misleading or deceptive practices by using vague and misleading terms in the contract and by stating to the plaintiffs that they would not have to make payments for excess mileage on their trade-in vehicle. *Id.*

¶ 14. Unlike the situation in *Inkel*, the undisputed statements made by the Bank to plaintiff's mother — informing her that it would repurchase the debt from KBMA and that the debt could be settled by payment of $150 — were nothing but straightforward and true. Again, the Bank did everything it told plaintiff it would do to resolve the issue. Though plaintiff may be correct in his argument, premised on *Inkel*, that a misrepresentation need not be made in bad faith to be actionable, we agree with the trial court's conclusion that the undisputed facts do not establish any misrepresentation at all. See *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 28, 181 Vt. 513, 928 A.2d 497 (affirm-

ing dismissal of a VCFA claim on summary judgment where there was no evidence of materially false or misleading statements).[*]

---

[*] Having concluded that no misrepresentation occurred, plaintiff's common law fraud and negligent misrepresentation claims must also fail. Common law fraud requires a showing of intentional misrepresentation of existing fact. *Bennington Hous. Auth. v. Bush*, 2007 VT 60, ¶ 8, 182 Vt. 133, 933 A.2d 207. It may also consist of the failure to disclose a material fact by one with a duty to disclose. *Sugarline Assocs. v. Alpen Assocs.*, 155 Vt. 437, 444, 586 A.2d 1115, 1120 (1990). Again, here, there was no such misrepresentation or nondisclosure. Similarly, plaintiff's negligent misrepresentation claim fails because there was no "false information" provided by the Bank upon which plaintiff relied, which is an essential element of the claim. *Howard v. Usiak*, 172 Vt. 227, 230-31, 775 A.2d 909, 912-13 (2001). Moreover, we agree with the trial court's conclusion that plaintiff's VCFA, common law fraud, and negligent misrepresentation claims were improperly asserted as fraud claims because they were actually claims that the Bank breached its contract with plaintiff's mother. Though plaintiff may have found the Bank's follow up to the agreement with his mother unsatisfying, it did not establish the basis for his VCFA, common law fraud, or negligent misrepresentation claims because the basic element of misrepresentation did not occur. See *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 136, 636 A.2d 744, 749 (1993) ("We have cautioned against confusing principles of contract with principles of fraud so that the elements of

¶ 15. Plaintiff also asserts that the Bank breached its agreement with plaintiff when KBMA debited $200 from his account and that the trial court erred by granting summary judgment in favor of the Bank. The agreement between the parties, however, was that the Bank would repurchase the debt from KBMA in exchange for $150, which it did. At the time of agreement, neither the Bank nor plaintiff's mother were aware of plaintiff's arrangement with KBMA, nor was prevention of the debit or action before a date certain a term of the agreement.

¶ 16. Further, there is no evidence that plaintiff suffered any damages. If damages are not proven, a breach of contract claim will fail. See *Smith v. Country Vill. Int'l, Inc.*, 2007 VT 132, ¶ 10, 183 Vt. 535, 944 A.2d 240 (mem.) ("Failure to prove damages is fatal to a claim for breach of contract . . . ."). Plaintiff alleges that he is entitled to the return of the $150 paid to the Bank by his mother because the Bank was in breach once KBMA debited the $200 from his account. This claim is without merit. The $200 debit was the result of plaintiff's miscommunications with his mother rather than any fault of the Bank. Indeed, the Bank went beyond its obligations to plaintiff by reimbursing him the $200 which was debited by KBMA. Thus, we agree with the trial court that there was no breach and plaintiff suffered no damages.

*Affirmed.*

---

fraud are made out by a mere breach of contract."); *Bevins v. King*, 147 Vt. 203, 205, 514 A.2d 1044, 1046 (1986) ("[P]rinciples of contract and principles of fraud must be kept separate and distinct.").