NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 26

No. 21-AP-264

| | |
|---|---|
| Sean Kelly | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| The University of Vermont Medical Center | March Term, 2022 |

Helen M. Toor, J.

William Pettersen of Pettersen Law PLLC, Colchester, for Plaintiff-Appellant.

F. David Harlow of Downs Rachlin Martin PLLC, Brattleboro, for Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll and Cohen, JJ., and Waples, Supr. J.,
          Specially Assigned

¶ 1.    **CARROLL, J.** Plaintiff Sean Kelly appeals an order granting summary judgment to the University of Vermont Medical Center (UVMMC) on employment discrimination and breach-of-contract claims arising from UVMMC's decision not to extend his one-year medical fellowship. We affirm.

¶ 2.    The following material facts are undisputed. Each year the Sleep Medicine Program at UVMMC offers one fellowship to a physician who has completed a medical residency. Each year, the fellowship begins on July 1 and ends on June 30. UVMMC has never trained more than two fellows at once. UVMMC selected plaintiff for the 2017-18 fellowship. UVMMC was aware that plaintiff suffered from an adrenal deficiency that had delayed the completion of his

residency. Prior to beginning the fellowship, plaintiff signed a contract with UVMMC called "University of Vermont Medical Center Conditions of Appointment and Training for GME Residents/Fellows, 2017-2018," outlining many aspects of his training, including describing his position as an "educational experience and training program." The contract provided that the fellowship would run from July 1, 2017, through June 30, 2018, and his annual base salary would be $65,981. Plaintiff's benefits included three weeks of paid time off, five sick or personal days, and five days off for employment interviews. The contract contained provisions for family medical leave and unpaid absences of up to six months for fellows with more than one year of service. The contract also contained the following clause: "[e]xtended leave of absences [sic] may require the resident/fellow to extend their training program to satisfy their program's certifying Board and Accreditation Council for Graduate Medical Education Requirements." Finally, the contract explained that plaintiff would be awarded a certificate of completion if he completed all requirements for sleep-medicine board eligibility "and as determined by the program director." However, the contract did not guarantee a certificate of completion.

¶ 3. In the first five months of the fellowship, plaintiff missed nineteen full days and parts of nine more days for various reasons, including job interviews, medical appointments, sick days, a dog-walking injury, and car trouble. By February 2018, after missing several more days and expressing that he felt "frustrated with [his] absences" and "overall inadequate as a fellow," program personnel became concerned that plaintiff was falling behind in his training. In a March 30 meeting set to discuss plaintiff's options, the program director told plaintiff that his performance had "deficiencies and these need[ed] to be addressed." At some point during this period, the director also told plaintiff that he "should plan on extending [his] fellowship due to [his] time out and some minor deficits through August." Plaintiff sent an email to other program personnel expressing frustration at the prospect of staying through August to complete his training. The director gave plaintiff a written plan for improvement on April 3.

2

¶ 4.     On April 14, 2018, plaintiff suffered a stroke, and on April 19th he attempted suicide. He was hospitalized from April 14 through May 3 and was not cleared to return to work until June 1, 2018. In all, plaintiff missed approximately six more weeks of the fellowship. On or about May 31, the director called plaintiff and told him that while UVMMC had determined he needed six more months of training to finish the fellowship, it could not accommodate additional training for that length of time. UVMMC paid plaintiff his remaining salary.

¶ 5.     Plaintiff filed a grievance under the Graduate Medical Education rules. At a June 2018 hearing, the grievance committee affirmed UVMMC's decision. Plaintiff thereafter filed a complaint in the civil division in December 2018 alleging multiple causes of action. After plaintiff amended his complaint, UVMMC moved for summary judgment on each of plaintiff's claims, which included discrimination and failure-to-accommodate violations of the Vermont Fair Employment Practices Act (FEPA), breach of contract, promissory estoppel, and defamation.[1] UVMMC's overarching argument regarding plaintiff's two FEPA claims was that they involved academic decisions made by UVMMC, not employment decisions, and that courts accord academic decisions deference. UVMMC maintained that once it fulfilled its obligations to plaintiff with respect to any employment aspects of the fellowship, including providing him with his remaining salary, the decision not to extend his fellowship was an academic decision because the sole purpose of extending the fellowship was the opportunity to obtain an academic benefit—a certificate of completion. UVMMC argued that plaintiff could not establish a prima facie case for discrimination because one of the required elements was whether plaintiff suffered an "adverse employment action." Because the decision not to extend his fellowship was an academic decision, there was no employment action and consequently no adverse employment action. UVMMC

---

[1] The trial court granted summary judgment to UVMMC on promissory estoppel and defamation because plaintiff did not respond to UVMMC's summary judgment arguments on those claims.

contended that plaintiff's accommodation claim failed because there was no reasonable accommodation that would have allowed him to finish his fellowship. Finally, UVMMC argued that it did not breach the contract when it declined to extend the fellowship, and plaintiff could not establish any damages arising from a purported breach. It pointed out that, although plaintiff could not take the Sleep Medicine Board Exam without a certificate of completion from a sleep-medicine fellowship program, he had twice failed the Internal Medicine Board Exam, another prerequisite for the Sleep Medicine Board Exam.

¶ 6.     Plaintiff countered that he suffered an adverse employment action because UVMMC denied extending the fellowship and terminated him after he took medical leave in April and May 2018. He maintained that prior to his stroke and suicide attempt, the program director had offered to extend his fellowship through August. He relied heavily on certain terms in the contract that "required" UVMMC to extend the fellowship due to extended medical leave, and that even if there was no requirement, the mere possibility of an extension was enough to survive summary judgment.

¶ 7.     Plaintiff argued that a six-month extension was a reasonable accommodation so that he could perform the essential functions of his fellowship. He contended that the fellowship contract contemplated at least a six-month extension,[2] that a fellowship itself is a non-essential position at the hospital, and that UVMMC had granted "dozens" of extensions in the past.

¶ 8.     Plaintiff pointed to several provisions in the fellowship contract which UVMMC had allegedly breached. He maintained that the "ACGME Sleep Medicine Requirements," a set of national standards for programs like the one at UVMMC, and which the fellowship contract incorporated required fellows to suffer no "negative consequences" resulting from extended medical leaves. He interpreted the ACGME as requiring UVMMC to alert its fellows "with

_____

[2] When asked during a September 2020 deposition whether he thought the employment contract provided for an indefinite extension, plaintiff responded, "yes."

4

accurate information regarding the impact of an extended leave of absence upon the criteria for satisfactory completion of the program." He characterized the contract's provision regarding extensions as "affirmatively guarantee[ing]" an extension if needed after medical leave. Plaintiff suggested that the word "may" in the "may be required to extend their training Program" clause pertaining to extended medical leave does not carry its ordinary meaning. Instead, "may" in this context means that a fellow may not need to extend a fellowship due to a medical leave "if they are far enough ahead in their proficiency that they are able to complete on time despite the medical leave."

¶ 9. Plaintiff argued he had provided sufficient evidence of contract damages when he offered an expert opinion showing that sleep-medicine physicians make approximately $20,000 more than plaintiff was currently making as a hospitalist, and that he would have passed the Internal Medicine Board Exams if he had not been so frequently hospitalized, among other reasons, during the periods leading up to previous test attempts.

¶ 10. The civil division granted UVMMC's motion on all counts. It first agreed that it must accord UVMMC deference because the decision to not extend the fellowship was an academic decision. However, it concluded that academic deference "does not completely insulate [UVMMC] from liability" because deference to academic decision-making cannot be "blind" to discriminatory decisions made by an academic institution.

¶ 11. The court next considered UVMMC's contention that a six-month extension was not a "reasonable accommodation" of plaintiff's disability under the FEPA. It weighed evidence regarding UVMMC's limited resources to train multiple fellows simultaneously and that only one fellow gets trained a year, against plaintiff's evidence showing UVMMC had given extensions in the past and plaintiff had initially been offered an extension through August before his stroke and suicide attempt. The court concluded that the evidence was "capable of multiple interpretations."

¶ 12. Next addressing plaintiff's discrimination claim, the court reasoned that the fellowship was a hybrid position that included both employment and academic aspects. It cited federal case law for the proposition that the correct analysis was to focus on the "context of the cause of action to determine whether the resident is to be treated as an employee or a student in a given case." Knapik v. Mary Hitchcock Mem'l Hosp., 90 F. Supp. 3d 292, 300 (D. Vt. 2015). It reasoned that an "adverse employment action" under the FEPA must ultimately "be tied to the employment relationship." The civil division concluded that because plaintiff had received all the economic benefits owed to him under the contract, and the only remaining benefit plaintiff did not receive was the opportunity for additional academic training toward obtaining the certificate of completion, there was no adverse employment action. Accordingly, the FEPA did not apply to UVMMC's decision not to extend the fellowship.

¶ 13. Turning to plaintiff's contract claims, the civil division found that the breach-of-contract claim failed for two reasons. First, while the contract required UVMMC to impose no "negative consequences" for taking medical leave and required UVMMC to alert plaintiff in advance what the impact of such an absence would be, these provisions did not necessarily extend to a situation in which a fellow missed months of a one-year fellowship and fell six months behind in his training. Second, plaintiff's argument that the provision reciting that a fellowship "may" be extended "[did] not mean [UVMMC] has to offer that option." Plaintiff's damages claim failed, the court concluded, because the damages were "pure speculation," and involved a lengthy causal chain of uncertain future events.

¶ 14. On appeal, plaintiff renews his arguments that, by not extending the fellowship, UVMMC (1) unlawfully discriminated against him, (2) failed to accommodate his disabilities, and (3) breached the employment contract.

## I. Standard of Review

¶ 15. "On appeal, we review summary judgment de novo and use the same standard as the trial court." Gallipo v. City of Rutland, 2005 VT 83, ¶ 13, 178 Vt. 244, 882 A.2d 1177. We will affirm if the moving party demonstrates that "there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." V.R.C.P. 56(a); see State v. G.S. Blodgett Co., 163 Vt. 175, 180, 656 A.2d 984, 988 (1995). We resolve all reasonable doubts and inferences concerning the existence of a material fact in favor of the nonmoving party. Gallipo, 2005 VT 83, ¶ 13. "The nonmoving party may survive the motion if it responds with specific facts raising a triable issue, and it is able to demonstrate sufficient evidence to support a prima facie case." G.S. Blodgett Co., 163 Vt. at 180, 656 A.2d at 988 (citation omitted).

## II. Discrimination

¶ 16. We first address plaintiff's discrimination claim under the FEPA, 21 V.S.A. §§ 495-496a. Plaintiff asserts he suffered an adverse employment action because of UVMMC's "denial of [his fellowship] extension and termination of his fellowship." He maintains that UVMMC had already communicated an offer to extend his fellowship for two months, but after his stroke and suicide attempt, reversed course and terminated him.

¶ 17. "Under [the] FEPA, the standard and burdens of proof are identical to those under Title VII [of the United States Code]." Gallipo, 2005 VT 83, ¶ 15. In general, to make out a prima facie case of employment discrimination, the plaintiff has the burden of establishing four elements. Robertson v. Mylan Lab'ys, Inc., 2004 VT 15, ¶ 25, 176 Vt. 356, 848 A.2d 310. He "must demonstrate that: (1) []he was a member of a protected group; (2) []he was qualified for the position; (3) []he has suffered an adverse employment action; and (4) the circumstances surrounding this adverse employment action permit an inference of discrimination." Id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). "Plaintiff's burden at this stage is relatively light." Gallipo, 2005 VT 83, ¶ 15.

7

¶ 18.    The Second Circuit has explained that an adverse employment action is "a materially adverse change in the terms and conditions of employment." Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (quotation omitted), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).  A material change is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (quoting Crady v. Liberty Nat'l Bank & Tr. Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993).  Such changes can include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. (quotation omitted).

¶ 19.    Medical fellowships constitute "both an employment relationship and an educational relationship."  See Knapik, 90 F. Supp. 3d at 300; see also Shaboon v. Duncan, 252 F.3d 722, 729 (5th Cir. 2001) ("[I]t is well-known that the primary purpose of a residency program is not employment or a stipend, but the academic training and academic certification for successful completion of the program." (quotation omitted)).  Whether the plaintiff is to be treated as an employee or a student is determined on a case-by-case basis by "examin[ing] the context of the cause of action." Knapik, 90 F. Supp. 3d at 300.  We accord deference to academic institutions when they make nondiscriminatory decisions "about the ethical and academic standards applicable to [their] students." Bhatt v. Univ. of Vt., 2008 VT 76, ¶ 15, 184 Vt. 195, 958 A.2d 637.

¶ 20.    As an initial matter, UVMMC did not terminate plaintiff, as his counsel conceded at oral argument.  Instead, UVMMC did not extend his fellowship.  Therefore, the question before us is whether the non-extension of his fellowship constituted an adverse employment action.  For the following reasons, we hold it did not.

¶ 21.    Plaintiff first argues that the non-extension of his fellowship is like the non-renewal of an employment contract, and contract non-renewal can be an adverse employment action.  He primarily relies on Leibowitz v. Cornell Univ., 584 F.3d 487 (2d Cir. 2009), for this proposition.

8

Leibowitz was an instructor at Cornell University and was appointed to a five-year term, which was renewable on a continuing basis. Although her contract was renewed once, it was not renewed a second time. The Second Circuit held that the non-renewal of an employment contract could be an adverse employment action where the employee seeks contract renewal. Leibowitz, 584 F.3d at 500. However, Leibowitz is readily distinguishable because Leibowitz was subject to an express renewal process for future five-year term appointments, which she had argued was similar to a tenure-track position. Moreover, while Leibowitz and the school had an academic relationship, the purpose of her continued employment at the school was not personal academic training culminating in a degree or certificate. On the other hand, plaintiff concedes that UVMMC provided him all the remuneration promised in the contract and that his contract period expired on June 30, 2018, albeit "with the opportunity for extension" under certain circumstances. He further concedes that he needed the certificate of completion to take the Sleep Medicine Board Exam, the culmination of the advanced training to become a sleep-medicine physician.

¶ 22.    Plaintiff next cites two cases, Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315 (3d Cir. 2008) and Flaherty v. Massapequa Pub. Schs., 752 F. Supp. 2d 286 (E.D.N.Y. 2010), for the proposition that "a renewal or an extension need not be guaranteed in order for the denial to qualify as an adverse employment action." However, Wilkerson and Flaherty, like Leibowitz, are not cases concerning employment and academic relationships; instead, they concern whether a non-renewal of an employment contract could constitute an adverse employment action.[3]    That question is inapplicable here because this matter concerns a non-guaranteed

_____

[3] Flaherty nominally concerns a school district's refusal to "extend" a superintendent's three-year contract. 752 F. Supp. 2d at 288, 296. However, the extension in Flaherty was essentially a contract-renewal option, unlike the limited extension involved here. See, e.g., id. at 289 ("[T]he School Board informed Flaherty that her contract would not be renewed."); id. at 298 (allegedly discriminatory statement "not made until two months after Flaherty was told that her contract would not be renewed"); id. at 300 ("[T]he [c]ourt assumes that Flaherty would have received another 4% raise at the end of the third year of work had her contract been renewed.").

9

extension to a one-year fellowship for which the plaintiff had been fully remunerated under the contract terms and the following year's position had already been filled. In fact, plaintiff does not cite a case holding that the refusal to extend a fellowship for the sole purpose of obtaining an academic credential is an adverse employment action.

¶ 23. Plaintiff argues that the trial court's reliance on Herrera v. Union No. 39 Sch. Dist., 2006 VT 83, 181 Vt. 198, 917 A.2d 923, was error because he "lost the economic benefits of his fellowship contract and employment," including potential benefits associated with an extension, when UVMMC did not extend the fellowship. In Herrera, a school board placed a high-school principal on paid administrative leave before the end of his two-year employment contract. The board decided not to renew the contract. Challenging these decisions, the principal claimed, under 42 U.S.C. § 1983, that the board deprived him of a constitutionally protected property interest in his employment. This Court reasoned that "his [property] interest extends only as far as the economic benefits that flow from his employment." Id. ¶ 26. Consequently, because the principal had been paid in full under the terms of the contract, we held that he was not deprived of a protected property interest. Id.

¶ 24. The civil division, analogizing the deprivation-of-property-interest issue in Herrera, concluded that because plaintiff had received all the economic benefits promised under the fellowship contract, the contract contained no right to an extension, and because the one-year fellowship had already been filled by another fellow, plaintiff "was not denied any employment position because such a position did not exist." Accordingly, the civil division continued, the non-extension of the fellowship was not an employment action. We agree.

¶ 25. UVMMC's decision not to extend plaintiff's fellowship can in no way be construed as a " 'materially adverse change' in the terms and conditions of [plaintiff's] employment." Galabya, 202 F.3d at 640. He was not terminated, he was not demoted, his salary was not decreased, he did not receive a less distinguished title, he did not lose any benefits, and he did not

10

suffer any diminished material employment responsibilities because he had none guaranteed after June 30, 2018. In fact, plaintiff concedes his fellowship was ultimately "a non-essential position for the hospital." The only material responsibilities he may have had after June 30 would have been maintaining the "ethical and academic standards applicable" to UVMMC fellows while he attempted to finish the fellowship. Bhatt, 2008 VT 76, ¶ 15.

¶ 26. We are further persuaded that UVMMC's decision was not an adverse employment action because although "employment" is not defined in the FEPA, its ordinary meaning denotes "the condition of having a paying job," or "[w]ork for which one has been hired and is being paid by an employer." Employment, Black's Law Dictionary (11th ed. 2020); see Brisson Stone, LLC v. Town of Monkton, 2016 VT 15, ¶ 19, 201 Vt. 286, 143 A.3d 550 ("Words not defined with a statute are given their plain and ordinary meaning, which may be obtained by consulting dictionary definitions."). There is nothing in the record indicating that UVMMC considered a possible extension to ensure that plaintiff had "a paying job," nor does plaintiff allege he was interested in extending the fellowship for that purpose. Indeed, plaintiff expressed frustration at the prospect of remaining at UVMMC beyond June 30 due to financial concerns.

¶ 27. In sum, UVMMC's decision not to extend plaintiff's fellowship was not an adverse employment action because it was an academic decision. See Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225 n.11 (1985) ("University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." (quotation omitted)). While plaintiff is correct in arguing that academic institutions may not make discriminatory academic decisions, UVMMC made no such decision here. Patel v. Univ. of Vt. & State Agric. Coll., 526 F. Supp. 3d 3, 10 (D. Vt. 2021) (noting that "academic institutions are not entitled to deference for discriminatory decisions"). Plaintiff concedes he missed significant periods of a one-year fellowship and had fallen behind in his training as early as February 2018. After his stroke and suicide attempt, he fell even further behind. That UVMMC

11

ultimately concluded plaintiff needed six months of additional training and decided it could not offer that to him given its limited resources, program description, and accreditation considerations, is not discriminatory. Cf. Connors v. Dartmouth Hitchcock Med. Ctr., Nos. 2:10-cv-94, 2:12-cv-51, 2013 WL 3560946, at *6 (D. Vt. July 11, 2013) (concluding hospital was not entitled to deference for dismissing psychiatry resident for reasons not involving "ethical lapses or academic deficiencies"). Requiring UVMMC to make a different decision on these undisputed facts would improperly substitute the Court's own preferences for UVMMC's decisions regarding how best to administer the fellowship, which is precisely why we accord academic institutions deference for such decisions.

### III. Failure to Accommodate

¶ 28. We next address plaintiff's failure-to-accommodate claim under the FEPA. 21 V.S.A. § 495d(6) (defining protected class of qualified individuals with disabilities as persons "capable of performing the essential functions of the job or jobs for which the individual is being considered with reasonable accommodation to the disability"). In his principal brief, plaintiff allocates two paragraphs to this claim. He argues that a prima facie failure-to-accommodate claim under the FEPA does not require a showing of an "adverse employment action," and recites the elements he argues are required. He then makes the assertion that his claim should survive summary judgment because he can satisfy all the elements, referring the Court to his summary judgment papers for containing "the reasons" why.

¶ 29. An appellant's principal brief must contain "the issues presented, how they were preserved, and appellant's contentions and reasons for them—with citations to the authorities, statutes, and parts of the record on which the appellant relies." V.R.A.P. 28(a)(4)(A); see Johnson v. Johnson, 158 Vt. 160, 164 n.*, 605 A.2d 857, 859 n.* (1992). "It is the burden of the appellant to demonstrate how the lower court erred warranting reversal. We will not comb the record searching for error." In re S.B.L., 150 Vt. 294, 297, 553 A.2d 1078, 1081 (1988).

12

¶ 30. Plaintiff's briefing on this issue falls short of the standards for adequate briefing under Vermont Rule of Appellate Procedure 28(a). His only citation is to a nonbinding case potentially standing for the proposition that no "adverse employment action" is required to make out a prima facie accommodation claim under the FEPA. He does not describe how the issue was preserved or how the trial court erred on the issue, nor does he direct us to the parts of the record he is relying on—other than his summary-judgment opposition memorandum. In effect, plaintiff tells us to comb through the memorandum and the rest of the record to locate his arguments and divine how the civil division erred as a result. This, we will not do. See Khan v. Alpine Haven Prop. Owners' Ass'n, Inc., 2020 VT 90, ¶ 29, __ Vt. __, 245 A.3d 1234 (concluding brief was inadequate because it failed to discuss required elements of claim).

IV. Breach of Contract

¶ 31. Finally, plaintiff argues that UVMMC breached the employment contract by not extending his fellowship. As a result, he is unable to make a sleep-medicine-physician salary, which, he argues, is more than he currently makes as a hospitalist. We address plaintiff's damages claim first.

¶ 32. "The rule is clearly established in Vermont that breach-of-contract damages must be proved with reasonable certainty." Madowitz v. Woods at Killington Owners' Ass'n, Inc., 2014 VT 21, ¶ 14, 196 Vt. 47, 93 A.3d 571 (quotation omitted). "Such damages therefore cannot be based on mere speculation and conjecture." Id. (quotation omitted). "An injury based on speculation about uncertain future events is no injury at all." See Hedges v. Durrance, 2003 VT 63, ¶ 12, 175 Vt. 588, 834 A.2d 1 (2003) (mem.).

¶ 33. Plaintiff maintains that he could make significantly more than his current $230,000 per year salary as a hospitalist if UVMMC had extended his fellowship. He submitted a report prepared by an expert, which included a salary analysis comparing hospitalists with sleep-medicine physicians. Plaintiff argues that, assuming UVMMC had extended his fellowship, the following

13

scenario is enough to survive summary judgment: (1) he would have finished the fellowship and received the certificate of completion; (2) he would have passed the prerequisite Internal Medicine Board Exam; (3) he would have subsequently passed the Sleep Medicine Board Exam; and (4) he would have obtained employment as a sleep-medicine physician. **AAB 13**. See Est. of Alden v. Dee, 2011 VT 64, ¶ 16, 190 Vt. 401, 35 A.3d 950 ("[T]he facts alleged must be sufficient for a reasonable jury to find in favor of the nonmoving party."). We are not persuaded.

¶ 34.    Plaintiff's argument is certainly "mere speculation" that the above series of events would have occurred if UVMMC had extended his fellowship for at least six months, and possibly indefinitely. Madowitz, 2014 VT 21, ¶ 19 (concluding that calculation of lost profits flowing from frustrated plan to construct forty condominiums after Act 250 construction permit deadline had passed was "entirely speculation"). Even assuming for the sake of argument that plaintiff could have finished the fellowship and obtained his certificate of completion, which is hard to imagine given the uncontested facts, he still needed to pass an exam he had twice failed before he sat for the Sleep Medicine Board Exam. He counters that he knew he had eight more chances to pass the Internal Medicine Board Exam, and in any case he "did not study as hard as he could have . . . due to a variety of reasons, including hospitalization."[4]

¶ 35.    Moreover, he argues that he would have subsequently passed the Sleep Medicine Board Exam and secured employment in the field because he was enthusiastic about the field generally, and he was drawn to work environments involving "less contact with contagious

---

[4] Plaintiff cites Artunduaga v. Univ. of Chi. Med. Ctr., No. 12 C 8733, 2016 WL 7384432, at *6 (N.D. Ill. Dec. 21, 2016), as evidence that other courts have not considered such damages claims too speculative in this context. However, the district court in that case found that the plaintiff had "an extensive, successful academic history," and "[b]ased on her academic success and work experience, there is a factual record supporting the assumption that [the] [p]laintiff would have passed her licensing examinations." Id. at *6. We are presented with the opposite situation here; plaintiff has twice failed the prerequisite licensing exam, concedes that he did so in part because he did not study hard enough, and concedes that he struggled with the academic requirements of the fellowship throughout his tenure.

patients, thereby protecting his immunocompromised state." We do not doubt the sincerity of plaintiff's assertions, but we cannot agree that they would have been "reasonabl[y] certain[]" to occur if UVMMC had extended his fellowship. Id. ¶ 14; see also Hedges, 2003 VT 63, ¶ 12.

¶ 36. Because plaintiff cannot prove damages, he cannot prove UVMMC breached the fellowship contract. Smith v. Country Vill. Int'l, Inc., 2007 VT 132, ¶ 10, 183 Vt. 535, 944 A.2d 240 (mem.) ("Failure to prove damages is fatal to a claim for breach of contract."). Accordingly, we need not, and do not, proceed to a discussion of the contract terms plaintiff argues UVMMC breached.

Affirmed.

FOR THE COURT:

_____
Associate Justice

15