*Fed. National Mortgage Assoc. v. Graham*, No. 331-6-14 Wncv (Tomasi, J., Mar. 9, 2020).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

SUPERIOR COURT
Washington Unit

CIVIL DIVISION
Docket No. 331-6-14 Wncv

Federal National Mortgage Association,
  Plaintiff

 v.

Susan Graham, et al.,
  Defendants

Opinion and Order on Defendant's Motion for Summary Judgment

This is a residential foreclosure action filed in 2014 by Mortgagee Federal National Mortgage Association against Mortgagors Susan Graham and Eric Graham.[1]  The Grahams conceded the default, but foreclosure has been delayed by litigation of the Grahams' third-party complaint against Bank of America, N.A. (BANA), which originated the loan in 2008, and owned and serviced it until Ms. Graham stopped making payments in 2013.  The instant motion concerns that third-party claim.  The Grahams allege that BANA surreptitiously perpetrated a bait-and-switch fraud duping them into different loan terms at the closing than they had anticipated and then responded to their subsequent requests to modify the loan terms to reduce the monthly payment with an unfair and oppressive course of conduct (including "dual-tracking" and granting them a modification but concealing

---

[1] Susan Graham is the sole borrower on the note.  Both Susan Graham and Eric Graham are signatories to the mortgage.

it from them), all ultimately designed to avoid any such modification and to cause them distress. The Grahams acknowledge that BANA had no duty to grant them a modification.

In earlier proceedings, the Court dismissed the Grahams' breach of contract claim (Count 1); Fair Debt Collection Practices Act claim (Count 2); Truth in Lending Act claim (Count 4); good-faith-and-fair-dealing claim (Count 5) insofar as it was predicated on the Servicer Participation Agreement (SPA), amended SPA, and Consent Judgment; and Foreclosure Mediation Act claim (Count 6). Remaining in the case were the Consumer Protection Act (CPA), 9 V.S.A. §§ 2451–2481x, claim (Count 3) and the good-faith-and-fair-dealing claim (Count 5) insofar as it is predicated on the note and mortgage.

Following discovery, BANA filed a well-supported motion for summary judgment addressing the Grahams' remaining claims. The Grahams' opposition filings markedly failed to comply with Rule 56 procedure. Rather than simply deem the facts asserted by BANA as undisputed and proceed to rule, however, the Court gave the Grahams—who have been represented by counsel at all times throughout this case—a second opportunity to oppose summary judgment in a manner complying with Rule 56.

The Grahams responded with a new memorandum and a statement of disputed facts that continues to misapprehend, at least in part, proper summary judgment procedure. For example, they argue, "at the very least, the Bank has failed to establish AS A MATTER OF LAW that it did not violate" the covenant of

good faith and fair dealing.  The Grahams' Memo in Opposition 13 (filed Nov. 13, 2019); *see also id.* at 15 ("[I]t is the Bank that must establish no genuine issues of material fact preclude a finding as a matter of law it did not violate the [CPA]."); *id.* at 22 ("[T]he egregious nature of the Bank's conduct highlights the Bank's inability to establish as a matter of law that it did not violate either the [CPA] or the implied covenant of good faith and fair dealing.").  As described below, however, summary judgment procedure does not ultimately require a defendant to prove a negative in this manner.  Rather, in the context of this case, BANA's motion calls upon the Grahams to demonstrate that disputed facts exist regarding their claims and that resolution of those facts in their favor would be sufficient for a jury to award them a verdict.

To expound further, summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c)(1), shows that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.  Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial).  The Court derives the undisputed facts from the parties' statements of fact and the supporting documents.  *Boulton v. CLD Consulting Engineers*, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 427.  A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact.  Instead, it

must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 215 A.3d 109, 113.

The Grahams—not BANA—have the ultimate burden of persuasion with respect to both of their remaining claims. *See Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 3, 179 Vt. 167, 170 (burden on breach of covenant of good-faith-and-fair-dealing); *Greene v. Stevens Gas Serv.*, 2004 VT 67, ¶ 13, 177 Vt. 90, 96 (burden on CPA claim). "Where, as here, the moving party [BANA] does not bear the burden of persuasion at trial, it may satisfy its burden of production [of evidence] by indicating an absence of evidence in the record to support the nonmoving party's [the Grahams'] case. The nonmoving party [the Grahams] then has the burden of persuading the court there is a triable issue." *Mello v. Cohen*, 168 Vt. 639, 639–40 (1998); *see also* 10A Charles Wright, Arthur Miller & Mary Kay Kane, *Fed. Prac. & Proc. Civ.* § 2727.2 (4th ed.) (*quoting McGuire v. Columbia Broadcasting System, Inc.*, 399 F.2d 902, 905 (9th Cir. 1968)) ("the showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law"). The Grahams' position, that BANA has not proven as a matter of law that it is not liable on their claims, is simply not directly responsive to BANA's motion.

BANA's motion is to the effect that the record, as BANA presents it, cannot support the Grahams' claims. The Court concludes that BANA's statement of

4

undisputed facts suffices to meet its burden of production of showing that the record evidence is insufficient to support the Grahams' remaining claims. As a result, the Grahams, in response, must come forward with evidence and argument showing that there is a triable issue for the jury with regard to the causes of action that they continue to advance. Otherwise, BANA will be entitled to judgment as a matter of law.

The Grahams also supplemented their new opposition with, for the first time, an affidavit from Ms. Graham. Affidavits are routinely used as supporting evidence for factual assertions made in support of or opposition to summary judgment. *See* Vt. R. Civ. P. 56(c)(1)(A). In general terms, an affidavit is a "voluntary *declaration of facts* written down and sworn to by the declarant before an officer authorized to administer oaths." Black's Law Dictionary 58 (7th ed. 1999) (emphasis added). Rule 56 expressly provides that an "affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Vt. R. Civ. P. 56(c)(4). Affidavits cannot be vague or conclusory; they must be based upon "concrete particulars." *Bickerstaff v. Vassar College*, 196 F.3d 435, 451 (2d Cir. 1999) (citation omitted); 10B Charles Wright, Arthur Miller & Mary Kay Kane, *Fed. Prac. & Proc. Civ.* § 2738 (4th ed.) (Regarding affidavits, "ultimate or conclusory facts and conclusions of law, as well as statements made on belief or 'on information and belief,' cannot be utilized on a summary-judgment motion.

5

Similarly, the mere reargument of a party's case or the denial of an opponent's allegations will be disregarded." (citations omitted)).

In contrast to these basic requirements, Ms. Graham's affidavit is 35 pages long and consists largely of argument, references to other evidence, hearsay, and conclusory assertions. It does not reasonably attempt to show how many of the statements would be admissible at trial if presented through Ms. Graham's testimony, and it appears most of the affidavit is comprised of matters that would not be admissible at trial. *See* Vt. R. Civ. P. 56(c)(2) (evidence in opposition to summary judgment must be in an admissible form). In light of these shortcomings, BANA, again, objects to the Grahams' noncompliance with Rule 56.

The Court will apply Rule 56 and rule on BANA's motion as briefed by the parties. The Court will consider only the materials specifically cited and adequately supported in the parties' statements of fact. *See* Vt. R. Civ. P. 56(c)(3) ("The court need consider only the materials cited in the required statements of fact."). The Court is not "obligated to wade through and search the entire record for some specific facts that might support" the Grahams' claims, and it will not do so. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

The Grahams have expressly clarified in their most recent memorandum that, with regard to their remaining claims, they do *not* claim that BANA: (1) improperly denied them more favorable terms at the inception of the loan; (2) thereafter improperly denied them a modification of the loan terms; or (3) breached any term of the Note or Mortgage. The Grahams' Memo in Opposition 2, 8 (filed

6

Nov. 13, 2019). They appear to continue to claim that there was a fraudulent "bait-and-switch" at the closing. It is unclear whether they continue to maintain that BANA engaged in "dual-tracking," carrying on negotiations over a modification while taking steps to foreclose. They also assert that, although they do not endeavor to prove that they were entitled to a modification, BANA, in fact, granted them one and then concealed it to prevent them from getting the benefit of it. Otherwise, they describe their claims as generally falling under the rubric of overall unfair treatment and insufficient assistance with their efforts at seeking the modification that, they concede, they were not entitled to in any event, all violating the CPA and the covenant of good faith and fair dealing.

1.    The Alleged Bait-and-Switch

Analysis of the Grahams' bait-and-switch claim is complicated by the Grahams' failure to articulate precisely what BANA is alleged to have done that amounts to a wrongful bait and switch scheme. *See Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 136 (1993) ("the classic bait-and-switch technique [is when] a seller induces consumer interest with an attractive offer and switches to other merchandise or terms, considerably less advantageous to the consumer"). As explained above, "the showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law." 10A Charles Wright, Arthur Miller &

7

Mary Kay Kane, *Fed. Prac. & Proc. Civ.* § 2727.2 (4th ed.) (*quoting McGuire v. Columbia Broadcasting System, Inc.*, 399 F.2d 902, 905 (9th Cir. 1968)).

The Grahams do not describe any bait-and-switch scheme in their most recent memorandum. The closest they come—in their statement of facts—is by purporting to dispute that they ever applied for an interest-only loan. "[I]t is disputed that the Grahams applied for an interest only loan. Rather, the evidence shows that Susan signed an Interest Rate Agreement that described the loan type as 'Conventional.'" The Grahams' Counter-Statement of Disputed Facts ¶ 53 (filed Nov. 13, 2019). As support, the Grahams cite exclusively to their own Exhibit 73, which appears to be part of an Interest Rate Agreement related to the initial $320,000 loan that fell through because their home did not appraise at a sufficiently high value. As a result, its relevance is unclear. In any event, Exhibit 73 notes that "Loan Type" is "Conventional." It nowhere, however, states that "Conventional" means that the anticipated adjustable rate loan does not start with an interest-only period, and the Grahams have cited no evidence to the effect that "Conventional" means any such thing. There is, thus, no meaningful evidence supporting any reasonable expectation that they were getting a loan with payments including principal from the outset.

In contrast, according to BANA's well-supported statement of facts, on November 12, 2008, Ms. Graham executed an "Interest Rate Agreement" for a "cash-out refinance loan" in the principal amount of $320,000 secured by her Rabbit Hollow home. In other words, she sought to refinance her then-current mortgage

8

loan with a new loan and take the remaining loan proceeds in cash. She sought a five-year interest-only adjustable rate mortgage, and her home had to appraise at no less than $400,000. When her home appraised for less than $400,000, BANA offered her a loan in the principal amount of $279,000. She executed a Uniform Residential Loan Application reflecting those terms. She then executed the corresponding note and mortgage. Some of the proceeds, $196,197.78, were used to pay off her previous mortgage loan, and she took the rest in cash. She was notified of her right to rescind the loan and never did. These facts are described clearly in BANA's statement of materials facts ¶¶ 1–21 filed on April 30, 2019, and they reveal no bait-and-switch scheme.

While the Grahams attempt to dispute some of the facts in ¶¶ 1–21 of BANA's statement of facts, their principal objection is that documentation related to the $320,000 loan that never happened now is irrelevant, a criticism that may be accurate but does not aid any showing of a viable bait-and-switch claim. There is no apparent triable issue of any bait-and-switch with regard to a loan with immediate principal payments that the Grahams sought (and which presumably would have had higher monthly payments) versus the interest-only loan that they apparently claim to have been tricked into. If they claim some other bait-and-switch scheme, they have simply failed to describe it with any specificity and show that it has any reasonable evidentiary basis. That is insufficient on summary judgment. On this record, the Grahams have not provided sufficiently supported evidence to raise a disputed issue of material fact concerning this claim.

9

2. Alleged Dual-tracking

Dual-tracking refers to the practice of pursuing foreclosure while "simultaneously considering the borrower for loss mitigation options." *Gordon v. U.S. Bank Natl. Assn.*, 455 P.3d 374, 388 (Idaho 2019) (citation omitted). It is not clear how dual-tracking possibly could have harmed the Grahams, nor is it even clear that the Grahams are continuing to pursue this claim at all. The state of the record is that the Grahams initially sought loss mitigation assistance sometime in 2011. They were formally notified that they did not qualify for assistance in October 2013. Ms. Graham *then* stopped making payments, and the loan first went into default. In other words, until the Grahams were finally denied a modification, they kept making payments. Until that time, Ms. Graham had not missed a payment, and there is no evidence that BANA or anyone else had ever taken any steps to foreclose. The record is thus devoid of any evidence of dual-tracking.

3. The Alleged "Concealed Modification"

In briefing, the Grahams argue that BANA actually granted them a modification but then concealed that fact from them, evidently to prevent them from getting that same modification. They assert: "Most egregiously, the Bank did not reveal that the underwriter determined that the Grahams were approved for a [Trial] Modification on October 22, 2013, yet on October 26th, the Grahams received a declination letter and on October 29th, they received a call from Ms. Hunter that

10

their appeal had been denied." The Grahams' Memo in Opposition 12 (filed Nov. 13, 2019). This allegation, however, is not supported in their statement of facts. Instead, the claim is apparently based on BANA's Exhibit 57. *See id.* at 17. Exhibit 57 is a "confidential" BANA "appeals cover page," which, among other things, bears this: "Appeal Granted/Send to Trial Mod" and "Appeal granted—Sent to BPG for Evaluation." The Grahams evidently assume—*without any explanation*—that these expressions mean that they were approved for a modification and BANA "must have" surreptitiously hidden it from them, and then BANA denied the same modification days later. BANA explains in briefing—not responded to by the Grahams—that the quoted expressions mean that the underwriter approved further evaluation by the BPG (Business Process Group) and, upon further evaluation, the modification was denied, which is why the Grahams were then notified of the denial. BANA's Objections to Plaintiffs' Counter-Statement 8 (filed Dec. 10, 2019). Any contrary assertion amounts to speculation that is unsupported by the summary judgment record. There is simply no triable issue on this record with regard to any such "modification." Further, even indulging the Grahams' conjecture, the Grahams agree that they had no right to a loan modification. Under those circumstances, the Court sees no basis for a cause of action based on BANA's purported "reconsideration" of its initial decision to grant a modification—all prior to the offer or acceptance of or the execution of any documentation for such an amended contractual arrangement.

11

### 4. Alleged General Poor Treatment

The Grahams also claim that they were mistreated by BANA in myriad ways. The mistreatment generally falls within the rubric of the Grahams seeking a modification, and BANA not doing enough to help them or making the process unnecessarily difficult. They claim that these interactions violated the CPA and the covenant of good faith and fair dealing implicit in the Note and Mortgage.

The Vermont Supreme Court has described the elements of a CPA claim as follows:

> To survive summary judgment, plaintiff must establish a deceptive act or practice by demonstrating that: (1) there was a representation, practice, or omission by the Bank that was likely to mislead consumers; (2) plaintiff interpreted the message reasonably under the circumstances; and (3) the misleading effects were material, meaning that the conduct influenced plaintiff's conduct regarding the transaction.

*Ianelli v. U.S. Bank*, 2010 VT 34, ¶ 10, 187 Vt. 644, 646. These elements are construed "using an objective standard." *Id.* "In an action for damages as a result of consumer fraud, the consumer must also demonstrate that he or she 'sustain[ed] damages or injury as a result of any false or fraudulent representations or practices' of the violator." *Lang McLaughry Spera Real Estate, LLC v. Hinsdale*, 2011 VT 29 ¶ 32, 190 Vt. 1, 16. "We have cautioned against confusing principles of contract with principles of fraud so that the elements of fraud are made out by a mere breach of contract." *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 136 (1993).

12

As for the covenant of good faith and fair dealing, it is "implied in every contract" to ensure that "each party promises not to do anything to undermine or destroy the other's rights to receive the benefits of the agreement." *Carmichael v. Adirondack Bottled Gas Corp. of Vermont*, 161 Vt. 200, 208 (1993). Merely complying with the terms of the contract cannot support an inference of bad faith. *See Southface Condominium Owners Ass'n, Inc. v. Southface Condominium Ass'n, Inc.*, 169 Vt. 243, 247 (1999). The covenant does not "interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise." *Downtown Barre Development v. C & S Wholesale Grocers, Inc.*, 2004 VT 47, ¶ 18, 177 Vt. 70, 80.

BANA's description of the undisputed facts addressing these claims, BANA's statement of facts ¶¶ 23–43, reflects numerous contacts between the parties from 2011 to 2013 in which the Grahams were seeking a modification, and BANA was seeking required documentation from the Grahams to evaluate properly their request. The facts reveal many episodes in which BANA had not received documents, had notified the Grahams of that, and the Grahams had been nonresponsive. When the documentation was finally received, in late 2013, BANA denied the request for modification. The Grahams were current on the loan up until that time. At that point, they stopped making payments.

The Grahams dispute most of these claimed undisputed facts on the basis that BANA did not submit the servicing records that would document them. This is insufficient. BANA's statement extensively relies on Exhibit A and further

supporting documents for its representations about the parties' interactions. Exhibit A is the affidavit of Arsheen Littlejohn, who is an assistant vice president/senior operations manager for BANA. She represents that she is familiar with BANA's business records and is familiar with those regarding Ms. Graham in particular. She testifies in detail and at length as to the content of those records and what they reveal. The Grahams do not argue that this testimony is somehow inadmissible or otherwise provides inadequate support for the facts in BANA's statement of undisputed facts. That BANA could submit additional evidence in support of otherwise supported facts does not amount to affirmative support for contrary facts in Ms. Graham's favor.

Even weighing all adequately supported facts in the Graham's statement of facts in their favor, the statement does not support the claim for a violation of the CPA or covenant of good faith and fair dealing. BANA is not alleged to have breached any of its contractual obligations, and it is not alleged to have caused the Grahams to breach any of their contractual obligations. Nor have the Grahams established any triable fact as to whether BANA took advantage of Ms. Graham's compromised health or financial status or that BANA somehow undermined the benefit of the bargain to the Grahams. Rather, the adequately supported facts show only that BANA voluntarily undertook to consider the Grahams for a modification of loan terms and, once it had the documentation necessary to evaluate a modification, it denied a modification. It did not refuse to consider a modification, and it had no duty to grant one. Bad faith cannot be inferred simply because BANA

14

observed the terms of the parties' contract. On this record, the Grahams have not provided sufficient and supported evidence to raise a triable issue on their CPA or covenant of good faith claims.

<u>Conclusion</u>

For the foregoing reasons, BANA's motion for summary judgment is granted.

Dated this __ day of March, 2020 at Montpelier, Vermont.

_____
Timothy B. Tomasi,
Superior Judge

15