Filed 02/15/24

VERMONT SUPERIOR COURT
Windham Unit
7 Court Street
Newfane VT 05345
802-365-7979
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 22-CV-00692

| Berol Dewdney, et al v. Ralph Duncan, IV |
| --- |

## ENTRY REGARDING MOTION

Title:      Motion for Summary Judgment  (Motion: 12)
Filer:      Sharon L. Annis
Filed Date: December 11, 2023

      This is a civil action brought by Plaintiffs Berol and Cordelia Dewdney against Defendant Ralph ("Reed") Duncan IV.  The gravamen of Plaintiffs' complaint relates to the alleged improprieties (undue influence, duress, and fraudulent promises) surrounding the execution of an amendment ("Third Amendment") to the Anna E. Dewdney Revocable Trust ("Revocable Trust").  The six-count complaint alleges: (Count I) intentional interference with expectation of inheritance ("IIEI"); (Count II) breach of contract; (Count III) promissory estoppel; (Count IV) unjust enrichment; (Count V) constructive fraud; and (Count VI) breach of fiduciary duty.  Before the court now is Defendant's motion for summary judgment pursuant to V.R.C.P. 56(a) on all counts of the complaint.  Plaintiffs oppose the motion.  For the following reasons, the motion is GRANTED.

### I. Procedural Background

      On February 28, 2022, Plaintiffs filed their complaint.  The complaint alleges (Count I) IIEI; (Count II) breach of contract; (Count 3) promissory estoppel; (Count IV) unjust enrichment; (Count V) constructive fraud; and (Count VI) breach of fiduciary duty.  All of the counts relate to Defendant's alleged improper influence on Anna Dewdney (Plaintiffs' mother, settlor, and the original trustee of the Revocable Trust) in executing the Third Amendment to the Revocable Trust.

      On May 26, 2022, Defendant filed a motion for judgment on the pleadings pursuant to V.R.C.P. 12(c), asking the court to dismiss all six counts.  Defendant's motion argued, *inter alia*, that the IIEI tort "has never been recognized under either Vermont common law, or by statute[,]" that "no cause of action for breach of contract can even accrue until the breach actually occurs and not when it is arguably 'discovered[,]'" that Plaintiffs' promissory estoppel claim must be dismissed because "it is impossible to demonstrate any reasonable reliance on the part of Plaintiffs to a promise that resulted in any harm to them[,]" that the unjust enrichment claim must fail because Plaintiffs "could [not] establish [that] Defendant was unjustly conferred a benefit that justice and equity demand must be returned[,]" that Plaintiffs' allegations, generally, do not support their claim of constructive fraud, and that "Plaintiffs' allegations as regards breach of fiduciary duty plainly fail as … a bald attempt to do an end run about the statute of limitations." See generally Def.'s Mot. Pl. (filed May 26, 2022).  This court

denied that motion as to all counts on grounds that V.R.C.P. 12(c) standard was not met. See Decision on Mot. Pl. (filed Oct. 25, 2022) at 3–5. Notably, when discussing Plaintiffs' IIEI claim, which also appears to be Plaintiff's primary claim, the court emphasized that there was a "strong likelihood," after reviewing the relevant Vermont law, "that the Vermont Supreme Court will recognize this type of claim, despite its novelty," and thus it would have been imprudent for the court to dismiss the count at that "phase of the litigation." *Id*. at 3.

On December 11, 2023, Defendant filed the instant motion for summary judgment pursuant to V.R.C.P. 56(a) on all of Plaintiffs' claims. Def.'s Mot. Summ. J. (filed Dec. 11, 2023). First, Defendant argues that "Plaintiffs' IIEI claim is not [a] recognized cause of action, either by the Vermont Supreme Court or through legislative enactment of law[,]" and thus "Plaintiffs' IIEI claim must be dismissed on those grounds." See *Id*. at 6–11. Alternatively, Defendant contends that "if th[e] court were to rely on its own law of the case in recognizing the IIEI tort pursuant to the elements set forth in the [Restatement (Third) of Torts,] Plaintiffs' claim must still fail, as they cannot meet their burden to prove no available probate remedy existed to provide relief for their claims." *Id*. at 11. Second, Defendant argues that Plaintiffs' claim of breach of contract is predicated on "an agreement to make will[,]" and thus "no breach of contract action can be determined, or can accrue until [Defendant] dies." *Id*. 24. Additionally, Defendant alleges, "no damages can even be determined until [Defendant] dies and … [u]ntil such time, the alleged contract's complete lack of any specificity as to what [Defendant] was supposed to bequeath Plaintiffs in his [w]ill precludes any assessment of damages in the event of any type of breach and is fatal to Plaintiffs' premature claim." *Id*. In the event that Plaintiffs allege that "[Defendant] has anticipatorily breached the contract by not agreeing a contract exists[,]" the claim must fail regardless, Defendant argues, as "Plaintiffs cannot establish the elements of an anticipatory breach of contract claim." *Id*. 26–27. Third, Defendant argues that Plaintiffs' claim of promissory estoppel must fail because "Plaintiffs have not only failed to evince any facts in discovery to support their claim that a specific and definite promise existed regarding inheritance of any royalty income—but their own testimony negates the existence of a promise." *Id*. at 32. Fourth, Defendant argues that Plaintiffs' claim of unjust enrichment should be dismissed because "[a]s with the promissory estoppel claim, Plaintiffs have failed to demonstrate they are legally entitled to assert this claim." *Id*. at 33. Fifth, Defendant argues that Plaintiffs' claim of constructive fraud should also be dismissed for the same reason. *Id*. at 36. Lastly, Defendant argues that Plaintiffs' claim of breach of fiduciary duty must be dismissed as time-barred by the statute of limitations in 14A V.S.A. § 1005(a). *Id*. at 40–46. The motion is supported by a statement of undisputed material facts ("SUMF") (filed Dec. 11, 2023) and several exhibits.

On December 21, 2023, Plaintiffs filed their opposition to Defendant's motion. Pl's.' Opp'n. (filed Dec. 21, 2023). Plaintiffs generally oppose Defendant's motion and his interpretation of the law. Plaintiffs also supply additional material facts and several exhibits. On January 4, 2024, Defendant filed a reply to Plaintiffs' opposition and a reply to Plaintiffs' additional material facts. Finally, on January 12, 2024, Plaintiffs filed their surreply.

**II. Analysis**

*A. Summary Judgment Standard*

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." V.R.C.P. 56(a); *Kelly v. University of Vermont Medical Center*, 2022 VT 26, ¶ 15, 216 Vt. 445. A fact is material only if it might affect the outcome of the case. *O'Brien v. Synnott*, 2013 VT 33, ¶ 9, 193 Vt. 546. In assessing whether a genuine dispute as to any material fact exists, the courts construe "the facts presented in the light most favorable to the nonmoving party," *Vanderbloom v. State, Agency of Transp.*, 2015 VT 103, ¶ 5, 200 Vt. 150, such that "the nonmoving party receives the benefit of all reasonable doubts and inferences." *Pettersen v. Monaghan Safar Ducham PLLC*, 2021 VT 16, ¶ 9, 214 Vt. 269. The courts, therefore, "accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." *Robertson v. Mylan Laboratories, Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356.

To survive a motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denials in its pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." *White v. Quechee Lakes Landowners' Ass'n, Inc.*, 170 Vt. 25, 28 (1999) (internal quotations omitted). If the nonmoving party fails to establish an essential element of its case on which it has the burden of proof at trial, the moving party is entitled to summary judgment as a matter of law. *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180 (1995).

*B. Undisputed Facts*

Applying the standards set forth above and viewing all evidence in the light most favorable to Plaintiffs, the following narrative emerges. Anna Dewdney was an author and illustrator of famous and popular children's books. Anna's first book that she both wrote and illustrated, "Llama Llama Red Pajama," was published in 2005. Since 2005, Anna's books—including a number of subsequent titles in the "Llama Llama" series—have sold many millions of copies worldwide and the brand has become extremely successful.

Plaintiffs Berol and Cordelia Dewdney are Anna's adult children from her first and only marriage, which ended when Berol and Cordelia were young girls. Anna began a long-term relationship with Defendant Ralph Duncan IV in the late 1990s that lasted until her death on September 3, 2016. Anna and Defendant met while they were both working at the Greenwood School in Putney and while Anna was still married to—but separated from—Plaintiffs' father. Anna and Defendant, however, never married. Anna, Defendant, and Plaintiffs all lived together at a shared residence at the Greenwood School for a number of years. From 2012 until her death in 2016, Anna and Defendant lived together in a house purchased by Anna at 3 Eldredge Road, Lower Bartonsville, Vermont. Defendant worked with Anna as her employee between 2012 and 2016, developing and running her children's book business. From 2016 until 2022, Defendant was employed by the Anna E. Dewdney Literary Trust (the "Literary Trust"), established by Anna in August 2015 to hold and administer her copyrights. As an employee of the Literary Trust, Defendant continued to run the business and edit, develop, and write children's books for the brand.

In 2011, Anna engaged in estate planning with attorney Jonathan Secrest. As a result, on October 17, 2011, she executed the Anna E. Dewdney Revocable Trust, wherein she assigned 40% of the trust's royalty income to each Plaintiff after Anna's death and 20% to Defendant. Anna was the original sole trustee of the Revocable Trust. Defendant also engaged in estate planning with attorney Secrest in 2011. On October 17, 2011, he executed his last will and testament. In his will, Defendant made both Plaintiffs the sole beneficiaries of his estate if Anna predeceased him. Defendant is presently alive. Both Plaintiffs and Defendant are the three beneficiaries of the Revocable Trust.

In March 2015, Anna suffered a grand mal seizure shortly after returning home from a book tour. In April of the same year, Anna was diagnosed with glioblastoma—an incurable, malignant cancer of the brain. Over the next year and a half, Anna underwent brain surgery at Massachusetts General Hospital, followed by an aggressive regimen of chemotherapy and radiation to attempt to prolong her life. Despite the mounting medical challenges, Anna continued working. Defendant was Anna's primary caregiver during the course of her illness.

Anna amended the Revocable Trust four times. First, on May 11, 2015, Anna executed the first amendment, wherein she appointed Defendant as a co-trustee. On the same day, Anna executed an authorization for Defendant to act as her agent under durable power of attorney. Second, on August 6, 2015, Anna executed the second amendment, wherein she restated and amended the Revocable Trust in connection with the creation of the stand-alone Literary Trust established on the same day.[1] Third and most importantly, on March 17, 2016, Anna executed the Third Amendment to the Revocable Trust, wherein she changed the distribution of the net royalty percentages and the share of any proceeds from the sale of Anna's home—from the original distribution of 40% to each Plaintiff and 20% to Defendant— to 50% to Defendant during his lifetime and 25% to each Plaintiff, and then 100% to Plaintiffs upon Defendant's death. Prior to executing the Third Amendment in March 2016, Anna sent an email to attorney Secrest advising that the "past year has made [her] feel differently about how [to] disburse [her] funds upon [her] death," and she expressed her desire "to change Reed's percentage of the trust outlay from 20% to 50%." See Pl's.' Ex. 23. Defendant has testified under oath that he did not ask for any change in his percentage of distributions from the Revocable Trust and that the change was purely Anna's idea. The fourth amendment was executed on August 19, 2016. Anna has never changed the distribution percentages in her Revocable Trust to the levels from before the execution of the Third Amendment.

On June 12, 2016, Anna sent Plaintiffs an email informing them of the distribution percentage change within the Revocable Trust made pursuant to the Third Amendment. Plaintiffs have never initiated an action in the Probate Court seeking to invalidate the Third Amendment to the Revocable Trust. Plaintiffs do not, through this lawsuit, seek to pursue a trust contest pursuant to 14A V.S.A. § 604 or otherwise seek to have the court invalidate the Third Amendment. Rather, Plaintiffs contend that Defendant procured the Third Amendment through undue influence and fraudulent promises.

Anna Dewdney died on September 3, 2016, after exercising her rights under the Death with Dignity protocol. Both Plaintiffs and Defendant were at her side at the time of her death. Following

---

[1] The Literary Trust holds all of Anna's copyrights, oversees Anna's literary assets, receives all royalties from Anna's literary works, and distributes the net proceeds to the Revocable Trust for distribution to the three beneficiaries. The Trust is managed by Defendant and both Plaintiffs as Co-Trustees.

Anna's death, Defendant became the sole Trustee of the Revocable Trust and remains the sole Trustee at this time.

*C. Discussion*

1. Intentional interference with expectation of inheritance[2] (Count I)

Plaintiffs' complaint alleges the IIEI tort as follows

[Plaintiffs] had a reasonable expectation of receiving an inheritance from Anna under the Trust in the amount of at least 40% each of the royalties from her literary assets and at least 40% each of the proceeds of any sale of the residence owned by the Trust, as specified in the initial Trust and the First and Second Amendments thereto. [Defendant] knowingly and intentionally interfered with and prevented [Plaintiffs] from receiving their expected inheritance. At a time when [Defendant] was in a position of confidence with respect to Anna, as Agent under her Durable Power of Attorney and Co-Trustee of the Trust, [he] applied undue influence, duress, and fraudulent promises to induce Anna to execute the Third Amendment to the Trust, thereby significantly reducing [Plaintiffs'] rights to distributions from the Trust and increasing his own. But for [Defendant's] actions, [Plaintiffs] would have received their expected inheritance.

Compl., ¶¶ 65–69. In his motion for summary judgment, Defendant argues that Plaintiffs' Count I should be dismissed because "IIEI … is not recognized cause of action" in Vermont, and in the alternative, because Plaintiffs' have failed "to [p]rove [t]hreshold [r]equirement that [n]o [p]robate [r]emedy [e]xisted." Def.'s Mot. Summ. J. at 6–23.

It is evident by now that at the heart of Plaintiffs' instant lawsuit is their IIEI claim. See Pl's.' Opp'n. at 53 ("If the finder of fact is not persuaded that Defendant acted with intent to manipulate Anna into changing her estate plan sufficient to make out a claim for intentional interference, the evidence may nonetheless support [Plaintiffs' alternative claims.]" Indeed, the parties have dedicated many pages in their submissions to this area of law. However, as Defendant correctly observes, the Vermont Supreme Court has not yet addressed whether a cause of action exists for intentional interference with expectation of inheritance. Therefore, this court must now take up the task of determining whether such a claim is cognizable in Vermont.

*a. IIEI is a cognizable claim in Vermont*

The origins of the IIEI tort can be traced to at least 1845, when in *Hutchins v. Hutchins*, 7 Hill 104, 109–10 (N.Y. Sup. Ct. 1845), the Supreme Court of the State of New York declined to recognize the tort in an action for deceit because the defendants had interfered with a "naked possibility" rather than a "right" of the plaintiff. Perhaps the first formal judicial recognition of the tort came in *Bohannon v. Wachovia Bank & Trust Co.*, 188 S.E. 390, 393–94 (N.C. 1936), where the North Carolina Supreme Court reasoned that the tort was needed to fill a gap that would leave an expectant beneficiary without a

---

[2] Throughout jurisdictions, courts use different terminologies to describe the tort. See e.g., *Anderson v. Archer*, 490 S.W.3d 175, 176 (Tex. App. 2016) ("tortious interference with inheritance"); *Cote v. Cote*, 143 A.3d 117, 121 (Me. 2016) ("tortious interference with expectancy of an inheritance"); *Firestone v. Galbreath*, 616 N.E.2d 202, 203 (Ohio 1993) ("intentional interference with expectancy of inheritance"); *Gomez v. Smith*, 54 Cal. App. 5th 1016, 1025 (Cal. Ct. App. 2020) ("intentional interference with expected inheritance"); *Bjork v. O'Meara*, 986 N.E.2d 626, 631 (Ill. 2013) ("intentional interference with a testamentary expectancy").

remedy for wrongful interference with his expected inheritance.[3]  Since then, the tort has been referred to by the United States Supreme Court as "widely recognized," *Marshall v. Marshall*, 547 U.S. 293, 312 (2006), and, indeed, recognized in nearly half the states.[4] See the Restatement (Third) of Torts § 19 Reporter's Note a ("The cause of action discussed here has been recognized in courts of about half the states, including most of those that have considered the issue."); Entry Regarding Motion (filed Oct. 25, 2022) ("Currently 19 U.S. states, most of which follow the Restatement (Second) [of Torts], recognize a tort action for interference with an inheritance or gift ...."); *Umsted v. Umsted*, 446 F.3d 17, 20 (1st Cir. 2006) (stating that "at least 23 states have recognized some form of the tort") (citations omitted).

The Vermont Superior Court was confronted with the tort on two occasions.  In *Clifford v. Livak*, No. 596-11-17 Rdcv, 2019 WL 13172494 (Vt. Super. Ct. Feb. 1, 2019) (Hoar, J.), the court observed that the plaintiff could not meet her burden, based on the Restatement (Second) of Torts § 774B, and the court saw no need "to predict whether the [Supreme] Court would recognize such a tort." *Id*. at * 4. Thereafter, in *Inouye v. McHugo*, No. 21-CV-00327 (Vt. Super. Ct. Nov. 17, 2021) (Teachout, J.), the court first allowed the claim based on § 774B to proceed in denying a motion to dismiss, before ultimately dismissing the claim on a motion for summary judgment for failing to "create a disputed issue to avoid summary judgment." *Inouye v. McHugo*, No. 21-CV-00327, slip op. at 5 (Vt. Super. Ct. Aug. 24, 2023) (Hoar, J.), available at https://www.vermontjudiciary.org/sites/ default/files/documents/inouye%20v%20estate%20of%20mchugo%20hoar%2021-cv-327%208-30- 23.pdf.

In most external jurisdictions where the tort has been recognized, courts reason, *inter alia*, that it constitutes a natural and principled extension of the law. See e.g., *Allen v. Hall*, 974 P.2d 199, 202 (Or. 1999) (allowing IIEI as an extension of liability in tort for intentional harm to prospective economic advantage); *Matter of Est. of Osguthorpe*, 491 P.3d 894, 914 (Utah 2021) (allowing IIEI as an extension of liability for intentional interference with contract).  Likewise in Vermont, the Superior Court has found that "[i]ntentional interference with inheritance is a *reasonable extension of similar torts that have been adopted in Vermont, including tortious interference with contract*." *Inouye*, No. 21-CV-00327 (Vt. Super. Ct. Nov. 17, 2021) (Teachout, J.) slip op. at 4 (emphasis supplied); see also *Mitchell v. Aldrich*, 122 Vt. 19, 22–23 (1960) ("the law has long recognized liability against one who intentionally intrudes to disrupt an existing contract relation"); *J.A. Morrissey, Inc. v. Smejkal*, 2010 VT 66, ¶¶ 20–27, 188 Vt. 245 ("[I]t was reasonable for the jury to conclude that [the defendant], ... interfered with a prospective business relationship in which [the plaintiff] had a reasonable expectancy.").

---

[3] But see *Labonte v. Giordano*, 687 N.E.2d 1253, 1255 (Mass. 1997) (proclaiming that Massachusetts had "long recognized a cause of action for tortious interference with the expectancy of receiving a gift in certain limited conditions," citing cases from 1907, 1934, and 1943).

[4] For instance, the IIEI tort has been explicitly adopted by the highest state courts in, *inter alia*, Georgia, *Mitchell v. Langley*, 85 S.E. 1050, 1053 (Ga. 1915); Maine, *Cyr v. Cote*, 396 A.2d 1013, 1018 (Me. 1979); Florida, *DeWitt v. Duce*, 408 So. 2d 216, 218 (Fla. 1981); Oregon, *Allen v. Hall*, 974 P.2d 199, 202 (Or. 1999); and Illinois, *In re Estate of Ellis*, 923 N.E.2d 237, 242 (Ill. 2009).  The tort has been explicitly rejected by the state's highest courts in, *inter alia*, New York, *Vogt v. Witmeyer*, 665 N.E.2d 189 (N.Y. 1996); Virginia, *Economopoulos v. Kolaitis*, 528 S.E.2d 714, 720 (Va. 2000); Nebraska, *Manon v. Orr*, 856 N.W.2d 106 (Neb. 2014); Tennessee, *Stewart v. Sewell*, 215 S.W.3d 815, 827 (Tenn. 2007); and Texas *Archer v. Anderson*, 556 S.W.3d 228, 229 (Tex. 2018).  In other states, the question surrounding the tort's existence is unsettled. See e.g., *Jackson v. Kelly*, 44 S.W.3d 328, 328 (Ark. 2001); *Hauck v. Seright*, 964 P.2d 749, 753 (Mont. 1998); *Anderson v. Meadowcroft*, 661 A.2d 726, 728 (Md. 1995).

The Vermont Superior Court decisions, along with numerous decisions in external jurisdictions, rely mainly on the Restatement (Second) of Torts when discussing the IIEI tort. Indeed, the Second Restatement first included the tort in 1979 under § 774B as follows

> One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.

Restatement (Second) of Torts § 774B. Since then, the Restatement (Third) of Torts § 19 has updated the tort as follows

> (1) A defendant is subject to liability for interference with an inheritance or gift if:
>
> > (a) the plaintiff had a reasonable expectation of receiving an inheritance or gift;
> > (b) the defendant committed an intentional and independent legal wrong;
> > (c) the defendant's purpose was to interfere with the plaintiff's expectancy;
> > (d) the defendant's conduct caused the expectancy to fail; and
> > (e) the plaintiff suffered economic loss as a result.
>
> (2) A claim under this Section is *not available* to a plaintiff who had the right to seek a remedy for the same claim in a probate court.

(emphasis supplied). Most of the updates do not appear to be material. The crucial difference between the respective positions of the Second and Third Restatements, however, is the latter's limitation of the IIEI tort to those unable to obtain relief in probate court. As the commentary to the Third Restatement recognizes,

> [l]iability under [§ 19] is not meant to interfere with probate law or to provide a way for a plaintiff to avoid its limits and restrictions. The rules of this Section are intended, rather, to provide relief when the defendant has committed an intentional legal wrong, the plaintiff has suffered injury as a result, and no remedy is available in probate.

Restatement (Third) of Torts § 19 cmt. a. The commentary continues that

> [a] proceeding in probate is considered available, for purposes of this Section, even if it offers less generous relief than would be attainable in tort. Nor does a probate court become unavailable because the limitations period has expired for pursuing a claim there. If a claim falls within a probate court's jurisdiction, or would have if timely, permitting a suit in tort is not appropriate.

*Id*. cmt. c. The Reporter's Note then highlights

> the importance of limiting tort claims to avoid interference with other mechanisms for resolving disputes about inheritances. Section 774B of the Restatement Second, Torts (AM. LAW INST. 1979), did not contain a similar emphasis. That Section, for example, did not discuss the threat that liability in tort might pose to the role of probate courts. Decisions applying § 774B have recognized the problem, however, and have sought to limit the tort claim accordingly. This Section follows those authorities.

*Id*. Reporter's Note a.  It also elaborates that

> [t]he Comment also takes the position that claims in tort are foreclosed by the availability of probate, not by the "adequacy" of probate. This language is chosen to avoid decisions that make a tort claim available because a plaintiff can obtain a larger recovery in tort than in probate.

*Id*. Reporter's Note c.  And although some states that recognize the IIEI tort do not impose the probate restriction, see e.g., *Plimpton v. Gerrard*, 668 A.2d 882, 887 (Me. 1995) ("The theoretical possibility of adequate relief in the Probate Court does not compel [the plaintiff] to go there to pursue his tortious interference claim."), the reasons for its enforcement offered by the drafters of the Third Restatement— and the overwhelming number of courts in accord with the requirement, see *Garruto v. Cannici*, 936 A.2d 1015, 1022 (N.J. Super. Ct. App. Div. 2007) (collecting cases)—are persuasive.

*b. Plaintiffs have failed to exhaust a remedy in probate*

Based on the foregoing, Plaintiffs have certainly alleged a cognizable claim.  The court, however, is not satisfied that Plaintiffs have complied with the limitation in § 19(2) that any probate remedy for the same claim must be exhausted prior to bringing the IIEI tort.  The court is persuaded that Plaintiffs had an avenue to pursue a remedy for the same claim in the Probate Division but either chose not to or were too late to avail themselves of it.

Plaintiffs contend that by bringing this lawsuit they do not "seek to formally invalidate the Trust instrument, but rather to obtain a remedy for Defendant's conduct, which deprived them of an expected benefit …." Pl's.' Opp'n. at 31.  Additionally, it is their contention that "Defendant deployed undue influence and false promises to pressure Anna Dewdney … into … granting him a substantial increase in distributions of royalty income from her Revocable Trust to the detriment of [Plaintiffs]." *Id*. at 61.  It is "the additional 30% of distributions received by Defendant under the Third Amendment" that Defendant would not have received but for his undue influence and false promises to Anna Dewdney that Plaintiffs seek restitution for.[5]

Pursuant to 4 V.S.A. § 35, the Probate Division has jurisdiction, *inter alia*, of "the administration of trusts pursuant to Title 14A." See also 14A V.S.A. § 203(a) ("The Probate Division of the Superior Court has exclusive jurisdiction of proceedings … brought by a trustee or beneficiary concerning the administration of a trust.").  Accordingly, "[a] court of probate has a special and limited jurisdiction created, and restricted, by statute … [and] nothing is to be presumed in favor of its jurisdiction." *In re Proctor*, 140 Vt. 6, 8 (1981).

First, it is evident that Plaintiffs were suspicious of Defendant's conduct surrounding Anna's contemplation of the Third Amendment even before its execution. Def.'s Ex. M.  Indeed, Plaintiffs communicated with Anna about their concerns regarding the Third Amendment and even sought independent legal advice at the time. *Id*. at 2 (Plaintiff Berol Dewdney stating to Anna Dewdney: "I'm concerned about the document I've seen, and I'm sending it to my lawyer to confirm.").  Logically then, Plaintiffs must have believed that Defendant induced the Third Amendment by undue influence and

---

[5] Plaintiffs contend that the 30% increase to Defendant's share constitutes "at least $540,000 … to date[,]" excluding interest. Pl's.' Resp. to Def.'s SUMF at 20.

false promises around the time of the execution of the Third Amendment itself.  The fact that Defendant *now* categorically denies the existence of any agreement to make Plaintiffs the sole beneficiaries of his will could never alter the fact that Defendant procured (*in the past*) the Third Amendment by inflicting undue influence.  The undue influence did not metastasize only after Defendant denied the existence of the agreement to make Plaintiffs the sole beneficiaries of his will—it was present around the time of the execution of the Third Amendment.  And if that was the case, Plaintiffs had an available probate remedy pursuant to 14A V.S.A. § 406.  Under that section, "a trust can be set aside or reformed on the … grounds … which include undue influence, duress, and fraud …." Uniform Trust Code § 406, Official Comment.  "[T]he invalidity of a trust on grounds of undue influence, duress, and fraud may be in whole or in part. *Id*.

Additionally, Defendant persuasively argues that "Plaintiffs [also] had standing to bring petition to remedy breach of trust in probate court under 14A V.S.A. § 1001(a)." Def.'s Mot. Summ. J. at 16–17.  Indeed, Plaintiffs and Defendant are beneficiaries of the Revocable Trust and Defendant is also the sole Trustee of the same. SUMF, ¶¶ 3, 14, 24.  Plaintiffs thus had standing to bring an action pursuant to 14A V.S.A. § 1001(a). Uniform Trust Code § 1001, Official Comment ("Beneficiaries and cotrustees have standing to bring petition to remedy breach of trust.").  The statute empowers the court to

> (1) compel the trustee to perform the trustee's duties;
> (2) enjoin the trustee from committing a breach of trust;
> (3) compel the trustee to redress a breach of trust by paying money, restoring property, or other means;
> (4) order a trustee to account;
> (5) appoint a special fiduciary to take possession of the trust property and administer the trust;
> (6) suspend the trustee;
> (7) remove the trustee as provided in section 706 of this title;
> (8) reduce or deny compensation to the trustee;
> (9) subject to section 1012 of this title, void an act of the trustee, impose a lien or a constructive trust on trust property, or trace trust property wrongfully disposed of and recover the property or its proceeds; or
> (10) order any other appropriate relief.

14A V.S.A. § 1001(b)(1)–(10).  The Official Comment to Uniform Trust Code § 1001 also emphasizes that the reference to "payment of money in subdivision (b)(3) includes liability that might be characterized as damages, restitution, or surcharge."  And pursuant to 14A V.S.A. § 1002(a)

> (a) A trustee who commits a breach of trust is liable to the beneficiaries affected for the greater of:
>
>> (1) the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred; or
>>
>> (2) the profit the trustee made by reason of the breach.

14A V.S.A. § 1002(a)(1)–(2).

Ironically, despite much ink that both parties have spilled analyzing Plaintiffs' Count I, a footnote in Defendant's Reply to one of Plaintiffs' submissions neatly summarizes the reason why the court is not persuaded that Plaintiffs' instant claim should proceed under the tenets of the Third Restatement.

> [A]n IIEI tort is a separate civil action only available under the Third Restatement when no probate remedy exists for the alleged harm. … [T]hat means litigant must first determine if probate remedy exists …. If no such remedy exists for litigant, only then can the litigant bring an IIEI claim in civil court.

Def.'s Reply to Pl's.' Opp'n. n 1. The court concludes that Plaintiffs have failed to show that they have pursued an available remedy in the Probate Division for their claim prior to initiating the instant lawsuit, and as a result, their IIEI claim cannot now stand in the Civil Division.

### 2. Breach of Contract (Count II)

Plaintiffs' complaint alleges breach of contract as follows

> Anna and [Defendant] formed a valid and binding agreement, pursuant to which Anna agreed to amend the Trust to increase [Defendant's] share of distributions to 50% and [Defendant] agreed in turn to provide for [Plaintiffs] as the sole beneficiaries of his estate under his will …. [Plaintiffs] were intended beneficiaries of the [c]ontract. After Anna performed her obligations under the [c]ontract, [Defendant] materially breached the [c]ontract by failing to perform and disavowing his obligations thereunder. As a direct and proximate result of [Defendant's] breach of the [c]ontract, [Plaintiffs] have suffered and will continue to suffer damages.

Compl., ¶¶ 71–74. In his motion for summary judgment, Defendant argues that Plaintiffs' Count II should be dismissed because "no breach of contract action can be determined, or can accrue, until [Defendant] dies." Def.'s Mot. for Summ. J. at 24. Alternatively, Defendant argues

> the claim must still fail, as no damages can even be determined until [Defendant] dies and it is determined a breach of contract occurred. Until such time, the alleged contract's complete lack of any specificity as to what [Defendant] was supposed to bequeath Plaintiffs in his [w]ill precludes any assessment of damages in the event of any type of breach and is fatal to Plaintiffs' premature claim.

*Id*. Lastly, Defendant contends, in the event that

> Plaintiffs attempt to avoid the reality that no breach of contract action and attendant damages could even possibly accrue until [Defendant] dies by asserting [he] has anticipatorily breached the contract by not agreeing a contract exists[,] … [their] claim must [still] fail, as Plaintiffs cannot establish the elements of an anticipatory breach of contract claim.

*Id*. 26–27.

a. *Anticipatory breach can accrue prior to Defendant's death*

Both parties are correct that Vermont has recognized a claim for breach of an agreement to make a will. *In re Estate of McHugo*, 2020 VT 59, ¶ 12, 212 Vt. 519 ("Vermont law has recognized and enforced contracts to make a devise") (citations omitted). The Vermont Supreme Court has also made it

clear that "breach of contract action based upon a contract to make a will does not accrue until the death of the promisor." *Mueller v. Mueller*, 2012 VT 59, ¶ 19, 192 Vt. 85 (citations omitted). Vermont courts, however, have also held that "repudiation before the time for performance constitutes an anticipatory breach of the agreement." *Lowe v. Beaty*, 145 Vt. 215, 218 (1984). And "[w]hen one party repudiates a contract, the other party … may bring an action for breach." *Record v. Kempe*, 2007 VT 39, ¶ 15, 182 Vt. 17 (citations omitted). "To constitute a repudiation, the defendant's statements must indicate a 'positive and unequivocal refusal to perform' under the contract." *Lowe*, 145 Vt. at 218 (quoting *Carvage v. Stowell*, 115 Vt. 187, 192 (1947)). These principles are equally applicable to the instant case. As the Rhode Island Supreme Court explained after examining relevant South Carolina and Mississippi authority

> [a]n agreement to devise property in a certain way by will is, most fundamentally, a contract like any other. Whether or not the promisor is living, the concern of the parties and the inquiry of the court remains essentially unchanged: Has a binding and enforceable agreement been made that affects the assets of the disputed estate? By allowing an action to be commenced upon the promisor's repudiation of the contract, the interests of both the promisor and the potential beneficiary of the alleged agreement are protected; the promisor who repudiates the contract receives a timely adjudication of his contractual responsibilities, and the beneficiary protects assets that might otherwise be wasted by the repudiating promisor. Where, after repudiation, the parties are forced to wait until the promisor dies before an action can be maintained on the contract, a subsequent adjudication of rights and responsibilities would likely be ineffectual and the contract, though binding and enforceable, would be successfully avoided.

*Thompson v. Thompson*, 495 A.2d 678, 682 (R.I. 1985).

*b. But anticipatory breach doctrine cannot apply in the instant case*

Defendant, however, argues that "[w]here one party fully performs a bilateral contract, it becomes a unilateral contract and the doctrine of anticipatory breach is inapplicable." Def.s' Mot. Summ. J. at 27. He contends that when "Anna executed the Third Amendment, … the contract [became] … unilateral and not subject to the claim of anticipatory breach." *Id*. 27–28. Defendant cites no Vermont law to support his proposition and it appears to the court that the issue of inapplicability of anticipatory breach doctrine to unilateral contracts is an issue of first impression in Vermont.

In essence, Defendant appears to rely on the general accord of most jurisdictions that "the rule of law is settled that the doctrine of anticipatory breach has in general no application to unilateral contracts, *and particularly to such contracts for the payment of money only*." *Smyth v. United States*, 302 U.S. 329, 356 (1937). This limiting rule also seems to encompass "bilateral contracts that have become unilateral by full performance on one side," as appears to be the case here. 23 Williston on Contracts § 63:60 (4th ed.). And

> [a]lthough the concept that the unilateral nature of plaintiff's obligation at the time of suit, or the circumstance that only money payments remain to be made by defendant … has been criticized, this criticism, whether justified or not, has had no appreciable effect on the course of judicial decisions. They are overwhelmingly in favor of the more logical rule of adhering to the contract the parties themselves have made.

*Id.*

On the other hand, Plaintiffs argue that "the limitation on the doctrine of anticipatory breach applies to a very particular class of contracts: agreements to pay a set sum of money at some future time." Pl's.' Opp'n. at 37.  Indeed, a great majority of cases that deal with the inapplicability of anticipatory breach doctrine reviewed contracts for payment of money only. See e.g., *Glenn v. Fay*, 281 F.Supp.3d 130, 139 (D. D.C. 2017) ("the doctrine of anticipatory repudiation is inapplicable to all unilateral contracts for future payment of money only"); *Cent. States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus., Inc.*, 252 F.3d 911, 915 (7th Cir. 2001) (describing the limitation on anticipatory repudiation as "if the payee has completely performed his side of the contract and is just awaiting payment, he [cannot] declare a breach and sue for immediate payment just because he has reason (even compelling reason) to doubt that the other party will pay when due").  Plaintiffs are obviously also correct that this is not a case of payment of money only. See also *Robert Half Int'l Inc. v. Billingham*, 317 F. Supp. 3d 379, 383 (D. D.C. 2018) (holding that the limitation of the anticipatory breach doctrine was inapplicable to expected violations of restrictive covenants); see also *Phelps v. Herro*, 215 Md. 223, 231 (Md. 1957) ("We think the proper rule is that the doctrine of anticipatory breach of a contract has no application to money contracts, pure and simple, where one party has fully performed his undertaking, and all that remains for the opposite party to do is to pay a certain sum of money at a certain time or times, and, under the circumstances of this case, this is as far as we need to rule, although some of the cases cited hold that the doctrine of anticipatory breach has no application whatsoever in unilateral contracts, or bilateral contracts that have become unilateral by full performance on one side.").  However, as one court noted,

> words [that] 'contracts [are] for the payment of money only', by themselves state no principle and are merely descriptive of the means of satisfaction of an obligation. The words employed should not obliterate the principles needed to determine whether the doctrine of anticipatory breach applies.

*Long Island R. Co. v. Northville Indus. Corp.*, 362 N.E.2d 558, 565 (N.Y. Sup. Ct. 1977).  Additionally, Justice Cardozo observed almost a century ago that

> [t]he root of any valid distinction is not in the difference between money and merchandise or between money and services.  What counts decisively is the relation between the maintenance of the contract and the frustration of the ends it was expected to subserve.  The ascertainment of this relation calls for something more than the mechanical application of a uniform formula.

*New York Life Ins. Co. v. Viglas*, 297 U.S. 672, 680–81 (1936).  Thus, it should be the interdependency of obligations that is determinative.  Indeed, the doctrine "has evolved as a defense to performance by the injured party" and "the theoretical basis for not applying it to unilateral contracts or bilateral contracts that have been fully performed by the injured party is that its application is unnecessary to such contracts." *Long Island R. Co.*, 362 N.E.2d at 563. See also *Id*. at 565.  And since it is an undisputed material fact that Anna, nor Plaintiffs for that matter, has no obligation of future performance in the instant case (only Defendant does), there is no interdependency of obligations and the doctrine of anticipatory breach cannot apply.  Ultimately,

> when the only requirement of the contract is the promisor's future performance[,] it more obviously is unjust to hold him liable to action immediately, [than] where

performances are to be rendered by both parties. … [A]llowing the promisee immediate recovery is nothing but a direct bonus to the promisee beyond what he was promised and a direct penalty to the promisor.

*Mabery v. W. Cas. & Sur. Co.*, 250 P.2d 824, 828–29 (Kan. 1952) (quoting text).

### 3. Promissory Estoppel (Count III)

Plaintiffs' complaint alleges promissory estoppel as follows

[Defendant] made a promise to Anna to provide for [Plaintiffs] as the sole beneficiaries of his estate in his will ("the Promise"). [Plaintiffs] are the intended beneficiaries of the Promise. [Defendant] did expect or reasonably should have expected the Promise to induce action or forbearance by Anna and by [Plaintiffs]. Anna reasonably relied on the Promise, to her detriment, in executing the Third Amendment to the Trust. [Plaintiffs] reasonably relied on the Promise, to their detriment, in forbearing from action to protect their interests when Anna informed them of the Third Amendment. Given this reliance, injustice can be avoided only by imposition of a constructive trust.

Compl., ¶¶ 76–81. Defendant's summary judgment motion contends that Plaintiffs' Count III must be dismissed because Defendant's promise to Anna Dewdney was insufficiently specific and definite to form the basis of a promissory estoppel claim as it "include[d] no detail as to what would, or must, be included in [Defendant's] [w]ill as assets" and "include[d] no promise that Plaintiffs would even inherit anything, just that they would be named as sole beneficiaries under his [w]ill." Def.'s Mot. Summ. J. at 30. Second, Defendant argues that since he "has already provided that Plaintiffs are the sole beneficiaries under his [w]ill … [they] therefore cannot prove any detrimental reliance …." *Id*. at 30. Lastly, Defendant argues, that the claimed existence of an agreement that "[Defendant] promised Anna Dewdney he would make Plaintiffs the sole beneficiaries of his [w]ill if Anna agreed to change her Revocable Trust to give him 50% of the net royalty proceeds instead of 20% … defeats any promissory estoppel claim." *Id*. at 31.

As the Vermont Supreme Court observed in *Foote v. Simmonds Precision Prod. Co.*, 158 Vt. 566, 573 (1992), "[t]he doctrine of promissory estoppel, as recognized in Vermont, is set forth in the Restatement (Second) of Contracts § 90(1) (1981)." The Second Restatement defines the doctrine as follows

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Restatement (Second) of Contracts § 90(1). The action or forbearance taken in reliance on the promise must be "of a definite and substantial character." *Ragosta v. Wilder*, 156 Vt. 390, 396 (1991) (quoting *Stacy v. Merchants Bank*, 144 Vt. 515, 521 (1984)). In other words, the promisee must have detrimentally relied on the promise. See *Larose v. Agway, Inc.*, 147 Vt. 1, 4 (1986). "In determining whether a plaintiff reasonably relied on a defendant's promise, courts examine the totality of the circumstances." *Tour Costa Rica v. Country Walkers, Inc.*, 171 Vt. 116, 120 (2000) (citing *In re Bonnanzio*, 91 F.3d 296, 305 (2d Cir.1996). Whether injustice can be avoided only by enforcement of the promise is a question of law informed by several factors, including

(a) the availability and adequacy of other remedies, particularly cancellation and restitution;[6]

(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

(d) the reasonableness of the action or forbearance; [and]

(e) the extent to which the action or forbearance was foreseeable by the promisor.

*Tour Costa Rica*, 171 Vt. at 123 (quoting Restatement (Second) of Contracts § 139(2)). The court should not "literally apply the term 'enforcement of the promise' … [because t]o do so would mean the only remedy available in a promissory estoppel case is specific performance." *Tour Costa Rica*, 171 Vt. at n 3.

Here, Defendant would have made an oral promise to Anna to provide for Plaintiffs as the sole beneficiaries of his estate in his will. This promise "must [have] be[en] more than a mere expression of intention, hope, desire, or opinion, which shows no real commitment." *Nelson v. Town of St. Johnsbury Selectboard*, 2015 VT 5, ¶ 56, 198 Vt. 277 (quotation omitted). A "vague assurance" is insufficient. See *Dillon v. Champion Jogbra, Inc.*, 175 Vt. 1, 10 (2002) ("Courts have generally required a promise of a specific and definite nature before holding [one] bound by it."). Defendant's promise to Anna in the instant case constitutes a promise of such sufficient specificity for the purposes of Plaintiffs' claim.

However, as Defendant rightly points out, "it is an undisputed fact that at all times since October 17, 2011, [Defendant] has … provided that Plaintiffs are the sole beneficiaries under his [w]ill." SUMF ¶ 12. At this stage, Plaintiffs seek to protect their interest and prevent Defendant from "changing his will at any time." Pl's.' Opp'n. at 44. On this record though, Plaintiffs have failed to demonstrate detrimental reliance. *Pettersen v. Monaghan Safar Ducham PLLC*, 2021 VT 16, ¶ 15, 214 Vt. 269. Indeed, to enforce a supposedly repudiated agreement to promise something while the promise central to that agreement itself still stands and has been demonstrably complied with lacks sense. And although Defendant rejects that he has any obligation to keep his promise, there is no indication that he does not intend to do so. Accordingly, until Defendant overtly backtracks and removes Plaintiffs from his will, their promissory estoppel claim cannot stand.

### 4. Unjust Enrichment (Count IV)

Plaintiffs' complaint alleges unjust enrichment as follows

In executing the Third Amendment to the Trust, Anna conferred a benefit upon [Defendant] by increasing his percentage of distributions of income from royalties and proceeds from any sale of Anna's residence. [Defendant] accepted the benefit. [Defendant] has retained the benefit conferred by the Third Amendment to the Trust under circumstances in which equity and good conscience demand that he return that

---

[6] The Supreme Court has previously stated with respect to availability and adequacy of other remedies that "[w]hile a full range of legal damages may be available, promissory estoppel plaintiffs are not necessarily entitled to them as of right." *Remes v. Nordic Group, Inc.*, 169 Vt. 37, 41 (1999).

which was given. Equity requires that the [c]ourt impose a constructive trust and grant restitution of any benefits received by [Defendant] as a result of his wrongful conduct.

Compl., ¶¶ 82–86. Defendant contends that Plaintiff's Count IV should be dismissed as they "fail to even allege in their [c]omplaint what the 'circumstances' are under which they allege 'equity and good conscience' would 'demand' the 'return of that which was given.'" Def.'s Mot. Summ. J. at 33–34. Additionally, he contends that Plaintiffs "cannot point to their claims of undue influence, coercion[,] and duress to support an argument that 'equity and good conscience' demand their former 40% percentage of royalty income conferred under the original Revocable Trust instrument be restored" while conceding the legitimacy of the Third Amendment in their pleadings. *Id*. at 34.

"[T]he equitable doctrine of unjust enrichment rests upon the principle 'that a man shall not be allowed to enrich himself unjustly at the expense of another.'" *Legault v. Legault*, 142 Vt. 525, 531 (1983) (quoting *Morse v. Kenney*, 87 Vt. 445, 449 (1914)). Its "long-recognized elements" are

(1) a benefit [is] conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value.

*McLaren v. Gabel*, 2020 VT 8, ¶ 25, 211 Vt. 591 (quoting *Reed v. Zurn*, 2010 VT 14, ¶ 11, 187 Vt. 613 (mem.)). In essence then, "[u]njust enrichment is present if, in light of the totality of the circumstances, equity and good conscience demand that the benefitted party return that which was given." *Mueller v. Mueller*, 2012 VT 59, ¶ 28, 192 Vt. 85 (quotation omitted); *Gallipo v. City of Rutland*, 2005 VT 83, ¶ 41, 178 Vt. 244 ("a party who receives a benefit must return [it] if [its] retention would be inequitable."). But "whether there is unjust enrichment present 'may not be determined from a limited inquiry confined to an isolated transaction[; rather i]t must be a realistic determination based on a broad view of the human setting involved.'" *Legault*, 142 Vt. at 531 (quotation omitted).

In the instant case, Plaintiffs state they "*absolutely* contend … that Defendant procured the Third Amendment through the exercise of undue influence and fraudulent promises, that the Third Amendment was not an expression of Anna Dewdney's true desires, and that Anna Dewdney would not have altered her Trust absent Defendant's wrongful actions." Pl's.' Opp'n. at 48 (emphasis in original). But it is beyond the court's comprehension how Plaintiffs can decide not to challenge a trust—implying by their forbearance that the trust is valid—while actually believing at the same time that the trust they deliberately choose not to challenge was brought about by undue influence and false promises— thereby implying that the trust is effectively invalid—but receive for many years the benefits under that believed-to-be invalid but, at the same time, deliberately unchallenged—therefore undisputedly valid— trust. It seems abundantly clear that Plaintiffs have crafted their narrative in this manner so as to support their IIEI claim. Plaintiffs must then, however, also bear the consequences of their constructing the narrative in this way. Therefore, in light of the totality of the circumstances, Plaintiffs have been for years receiving benefits under the trust just like Defendant has, Defendant's will names Plaintiffs as the sole beneficiaries of his will, and as a result, the court cannot see how a claim of unjust enrichment could stand on this record.

### 5. Constructive Fraud (Count V)

Plaintiffs allege constructive fraud in their complaint as follows

[Defendant] was in a position of superior influence over Anna. [Defendant] intentionally used his position of influence over Anna to gain an unfair advantage at the expense of [Plaintiffs], and by inducing Anna to execute the Third Amendment to the Trust. Equity requires that the [c]ourt impose a constructive trust and grant restitution of any benefits received by [Defendant] as a result of his wrongful conduct.

Compl., ¶¶ 88–90. Defendant contends that Plaintiff's Count V should be dismissed, *inter alia*, due to a lack of particularity to their allegation and their "acknowledgment that the Third Amendment to the Revocable Trust executed by Anna is valid." Def.'s Mot. Summ. J. at 37–39.

"Constructive fraud may occur where a wrongful act injures another but is done without bad faith or a malevolent purpose on the part of the perpetrator." *Hardwick-Morrison Co. v. Albertsson*, 158 Vt. 145, 150 (1992). It is often found where misrepresentations do not rise to the level of deceit, or actual fraud, see e.g., *Proctor Trust Co. v. Upper Valley Press, Inc.*, 137 Vt. 346, 354, (1979), and where a party in a position of superior knowledge or influence intentionally gains an unfair advantage at the expense of another. See e.g., *Griffin v. Griffin*, 125 Vt. 425, 437–38 (1965). Thus, "'[a]ctual fraud' is deceitful misrepresentation or concealment with evil intent, while 'constructive fraud' is wrongdoing without bad faith." *Proctor Trust Co. v. Upper Valley Press, Inc.*, 137 Vt. 346, 354 (1979). In other words, "[w]here there is no *intent* to mislead or defraud, but the other elements of fraud are met[,]" Vermont courts have found constructive fraud. *Sugarline Assocs. v. Alpen Assocs.*, 155 Vt. 437, 444 (1990) (citing *Proctor*, 137 Vt. at 354) (emphasis supplied).[7]

With respect to Defendant's first contention, the Vermont Supreme Court has not considered whether the V.R.C.P. 9(b) standard of pleading fraud with particularity applies when constructive fraud is being pleaded. Throughout external jurisdictions, there appears to be a split of authority on the question. Compare, e.g., *Doe v. Roman Cath. Diocese of Greensburg*, 581 F. Supp. 3d 176, 190 (D.D.C. 2022) (Rule 9(b) also governs constructive fraud claims); *Town of Geraldine v. Montana Municipal Ins. Authority*, 198 P.3d 796, 801 (Mont. 2008) (allegation that "misleading behavior … constitutes constructive fraud" lacked particularity); *Mortarino v. Consultant Eng. Services*, 467 S.E.2d 778 (Va. 1996) (rejecting a claim for constructive fraud because the plaintiff "failed to plead, with the requisite degree of particularity, facts which support all the elements of [the] cause of action") with, e.g., *In re Allou Distributors, Inc.*, 387 B.R. 365, 385 (Bankr. E.D.N.Y. 2008) ("The particularity requirement of Rule 9[b] applies only if actual, as opposed to constructive, fraud is alleged."); *Cendant Corp. v. Shelton*, 474 F. Supp. 2d 377, 380 (D. Conn. 2007) ("Courts have not applied Rule 9[b] to claims of constructive, rather than actual, fraud."); *Terry v. Terry*, 273 S.E.2d 674 (N.C. 1981) ("claim of constructive fraud does not require the same rigorous adherence to elements as actual fraud"). Ultimately however, the court need not determine which approach to follow because as Plaintiffs point out, "arguments under Rule 9(b) relate to the pleadings and thus are 'misplaced at the summary judgment stage and on the eve of trial.'" Pl's.' Opp'n. at 50–51 (quoting *In re Gen. Motors LLC Ignition Switch Litig.*, 154 F. Supp. 3d 30, 41–42 (S.D.N.Y. 2015) and citing *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 478 n 2 (6th Cir. 2014) ("Rule 9(b) imposes a pleading requirement, and challenges to the sufficiency of the pleadings must be asserted in a motion to dismiss under Rule 12(b)(6) rather than on summary judgment.").

---

[7] "Constructive fraud is an equitable claim that typically has not afforded relief in the form of monetary damages." See e.g., *Union Bank v. Jones*, 138 Vt. 115, 121 (1980). But see *Retail Pipeline, LLC v. Blue Yonder Grp., Inc.*, No. 2:17-CV-00067, 2021 WL 3891648, at * 15 (D. Vt. Aug. 31, 2021) (noting that "the Vermont Supreme Court has not adopted a *per se* rule.") (emphasis supplied).

Secondly, Plaintiffs acknowledge that "a significant aspect of [their allegation] is that constructive fraud exists due to [Defendant's] 'undue influence' exerted on Anna that led her to change the royalty distribution percentages." Pl's.' Opp'n. at 51 (quoting Def.'s Mot. Summ. J. at 40). Plaintiffs also contend that constructive fraud often arises where "a special confidential, or fiduciary relationship exists which affords the power and means of one to take undue advantage over the other." *Id*. at 52 (quoting *Rosales v. AT&T Info. Sys., Inc.*, 702 F. Supp. 1489, 1498 (D. Colo. 1988). These are the exact circumstances, Plaintiffs argue, "unquestionably" present in the instant case. *Id*. They also contend that after the Third Amendment had already been executed, Defendant met with Plaintiffs and Anna and "affirmed" that he would "irrevocably" provide for Plaintiffs in his will. Pl's.' Opp'n. at 52–53; Pl's.' Ex 34, ¶¶ 9–11; Pl's.' Ex 35, ¶¶ 4–6.

> But ultimately, just as Defendant rightly observes,
>
> [i]t is fundamentally impossible for a person to consciously 'affirm' an agreement with the other party in front of the intended beneficiaries of that agreement, and then later to disavow the same without some bad faith or intent. *Hardwick*, 158 Vt. at 150. For constructive fraud to accrue, any change in position that harms another must be "wrongful," but also must be "done without bad faith or malevolent purpose on the part of the perpetrator." *Id*.

Def.'s Reply to Pl's.' Opp'n. at 29. Plaintiffs' evidence clearly alleges such "intent" or "bad faith" that is incompatible with a constructive fraud claim. Indeed, after affording Plaintiffs "the benefit of all reasonable doubts and inferences[,]" *Pettersen*, 2021 VT 16, ¶ 9, the resulting narrative demonstrates that Defendant must have acted with some "bad faith" or "evil intent," *Proctor*, 137 Vt. at 354, in repudiating the alleged "irrevocable agreement" that he would make Plaintiffs the sole beneficiaries of his will if Anna executed the Third Amendment. It would be simply impossible for Defendant to first affirm and acknowledge an agreement, his responsibilities under that agreement, its irrevocability, and then later fundamentally reject the existence of such an agreement without some "bad faith" or "evil intent." Accordingly, on this record, Plaintiffs' Count V cannot stand.

### 6. Breach of Fiduciary Duty (Count VI)

Lastly, Plaintiffs' complaint alleges breach of fiduciary duty as follows

> As Trustee of the Trust, [Defendant] owed a fiduciary duty to the Trust's beneficiaries at all times. As beneficiaries of the Trust, [Plaintiffs] were and are owed a fiduciary duty by [Defendant]. [Defendant] breached his fiduciary duties to [Plaintiffs] by inducing Anna to execute the Third Amendment to the Trust, thereby securing himself a substantial benefit at the expense of [Plaintiffs], through means of undue influence, duress, and fraud. [Defendant] did not and has not made a formal report to the beneficiaries of the Trust disclosing facts that would put the beneficiaries on notice or inquiry of their potential claim against him for breach of his fiduciary duties. As a direct and proximate result of [Defendant's] breach of his fiduciary duties, [Plaintiffs] have suffered and will continue to suffer damages.

Compl., ¶¶ 92–96. The Supreme Court in *Est. of Alden v. Dee* summed up the basics of Plaintiffs' claim.

> A trustee is a fiduciary who owes duties of loyalty, disclosure, impartiality, and prudence to the beneficiaries, 14A V.S.A. §§ 802–804, 813, the breach of which is actionable. *Id*. §

1001. "A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." *Id*. § 1001(a). A trustee must act with "utmost probity in all matters concerning the [fiduciary] relationship." *O'Connor v. Redstone*, 896 N.E.2d 595, 607 (2008) (quotation omitted); see *J.A. Morrissey, Inc. v. Smejkal*, 2010 VT 66, ¶¶ 11, 19, 188 Vt. 245 (noting fiduciary's calculated plan to sabotage beneficiary and personally benefit violates duty of "utmost good faith and loyalty"). Disclosure by a trustee is fundamental to sound trust administration and the beneficiaries' ability to monitor the trustees' performance of their duties. Restatement (Third) of Trusts § 82 cmt. d.

2011 VT 64, ¶ 17, 190 Vt. 401 (cleaned up). Defendant, however, does not dispute the merit of Plaintiffs' Count VI. Rather, he argues that the claim should be dismissed as time-barred by the one-year limitation period in 14A V.S.A. § 1005(a). Def.'s Mot. Summ. J. at 41–46.

But even if Plaintiffs ultimately could prevail on their statute of limitations argument, this court is unconvinced that the Civil Division is the place for them to do so. Indeed, as the decision in *Est. of Alden* cited above makes clear,

> [a] trustee is a fiduciary who owes duties of loyalty, disclosure, impartiality, and prudence to the beneficiaries, … the breach of which is actionable. A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust.

2011 VT 64, ¶ 17 (citations omitted). It also bears repeating that the Legislature has given the Probate Division exclusive jurisdiction over matters involving the administration of trusts pursuant to Title 14A. See *Collins v. Collins*, 2017 VT 70, ¶ 15, 205 Vt. 251; 4 V.S.A. § 35. See also 14A V.S.A. § 203(a) ("The Probate Division of the Superior Court has exclusive jurisdiction of proceedings … brought by a trustee or beneficiary concerning the administration of a trust."). Plaintiffs' Count VI is exactly one such claim: "brought by a … beneficiary … concerning the administration of a trust." It might even be said that this is exactly the claim that Plaintiffs should have sought to bring in the Probate Division prior to bringing their IIEI claim (Count I) in tort. Thus, since Plaintiffs' Count VI, as alleged, is squarely within the Probate Division's exclusive jurisdiction, this court must now dismiss the claim at the instant procedural posture.

## Order

Accordingly, for the foregoing reasons, Defendant's motion for summary judgment is GRANTED on all counts.

**Signed Electronically on February 15, 2024 pursuant to V.R.E.F. 9(d).**

_____
**David Barra**
**Superior Court Judge**